1
2
3
4            UNITED STATES DISTRICT COURT
5            EASTERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| 7  **UNITED STATES EQUAL**<br>**EMPLOYMENT OPPORTUNITY**<br>8  **COMMISSION,** | **CASE NO. 1:17-CV-1299 AWI SAB** |
| 9            **Plaintiff** | **ORDER ON DEFENDANTS' MOTION**<br>**TO DISMISS** |
| 10            **v.** | |
| 11  **PRESTIGE CARE, INC., et al.,** | (Doc. No. 31) |
| 12            **Defendants** | |

14        This is civil rights enforcement action by the United States Equal Employment

15  Opportunity Commission ("EEOC") against numerous affiliated entities who operate senior living

16  and nursing facilities in several states (collectively "Prestige").  The EEOC brings claims against

17  Prestige for violations of the Americans with Disabilities Act ("ADA").  Currently before the

18  Court is Prestige's Rule 12(b)(6) motion to dismiss.  For the reasons that follow, the motion will

19  be granted in part and denied in part.

20

21            **RULE 12(b)(6) FRAMEWORK**

22        Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

23  plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

24  dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

25  absence of sufficient facts alleged under a cognizable legal theory.  See Mollett v. Netflix, Inc.,

26  795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-

27  pleaded allegations of material fact are taken as true and construed in the light most favorable to

28  the non-moving party.  Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017).  However,

complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

# FACTUAL BACKGROUND

From the Complaint, Prestige manages and provide senior nursing care facilities or senior assisted living facilities in California, Oregon, Washington, Alaska, Idaho, Montana, Nevada, and Arizona.  Prestige either promulgated or implemented and followed policies that allegedly violated the ADA.  Specifically, a"100% healed/100% fit for duty" return to work policy and a maximum leave policy.  Further, Prestige did not offer light duty as a reasonable accommodation and ignored its obligation to engage in an interactive process.  These policies do not permit reasonable accommodation for qualified individuals.  At least thirteen individuals (Stephanie Chilton, Amanda Morales, Cece Chang, Catherine Olver, Generic Cowee, Linda Gagliardi, Claimant X,[1] Anthony Morelli, Cathleen Hackett, Tonia Habenicht, Catherine Johnston, and Mitchell Miller) have been adversely affected by Prestige through operation of the above policies.

# DEFENDANTS' MOTION

*Defendants' Argument*

Prestige argues that the EEOC seeks to recover on behalf of thirteen identified claimants for violations of the ADA.  The Complaint is deficient with respect to ten claimants in that the Complaint fails to allege an impairment that affects a major life activity, or fails to identify essential job functions  Without such allegations, there is no plausible ADA claims with respect to the ten claimants.

*Plaintiff's Opposition*

The EEOC argues that dismissal is inappropriate because it brings suit in its own name and the allegations state plausible claims.  Prestige does not challenge any of the claims that are pled on behalf of the EEOC.  If those claims are proven to be true, the EEOC argues that it may obtain relief on behalf of a class of individuals, which would include both named and unnamed individuals.  It would be premature to determine without the benefit of discovery that the EEOC is not entitled to collect on behalf of specific individuals.  Alternatively, even if the Court examines the allegations of the ten identified claimants as if they had brought their own individual suits, the

---

[1] Claimant X's name is withheld for privacy concerns, as he is HIV positive.

allegations are sufficient for the Court to infer an entitlement to relief. Should the Court find that the Complaint is deficient, amendment could cure any deficiency.

*Discussion*

Initially, the Complaint alleges three causes of action: one claim based on the 100% healed policy, one claim based on the maximum leave policy, and one claim based on the failure to hire Mitchell Miller. The EEOC brings these claims in its own name and in the public interest. See EEOC v. Waffle House, Inc., 534 U.S. 279, 286-89 (2002). Prestige does not challenge the adequacy of the EEOC's allegations with respect to the actual causes of action. The dispute concerns the EEOC's allegations that identify the ten individuals who were allegedly adversely affected by the 100% healed policy and the maximum leave policy. Therefore, regardless of the outcome of this motion, this case will proceed.

a.    Pleading Requirement

When the EEOC pursues class complaints, case law indicates that the complaint must identify at least one charging party/claimant and demonstrate that the individual has experienced discriminatory conduct that falls within the purview of the ADA. See EEOC v. UPS, 2013 U.S. Dist. LEXIS 4462, *17-*18 (N.D. Ill. Jan. 11, 2013) (and cases cited). In order for the ADA to apply in the employment context, a person must be a "qualified individual" who is "disabled." See Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (discussing prima facie case for failure to accommodate); Bates v. United Parcel Svc., Inc., 511 F.3d 974, 988-89 (9th Cir. 2007) (en banc) (discussing prima facie case for disparate treatment). Therefore, even when pursuing class claims, the EEOC must plausibly allege that at least one charging party is a "qualified individual" who is "disabled." See UPS, 2013 U.S. Dist. LEXIS 4462 at *17-*18 (and cases cited therein). Here, there are no challenges to the allegations of discrimination and the applicability of the ADA with respect to class members Habenicht, Effinger, and Miller.

With respect to the allegations concerning the ten additional complainants/class members, neither side cites cases that have directly addressed the issue. Typically, identification of class members who not identified in a complaint, as well as a determination of whether the EEOC may recover for them, occurs at a later stage of the proceeding after discovery has occurred. See UPS,

2013 U.S.Dist. LEXIS 4462 at *18.  However, by identifying additional class members and describing their circumstances and experiences, the EEOC is making significant representations about those members.  In essence, the EEOC is averring that the additional members suffered discrimination, the members are protected by the ADA, a recovery is being sought for those members, and the members' experiences are similar to other unidentified class members.  Because a recovery is being sought for those members, the circumstances and eligibility to recover under the ADA of any identified class member is put directly into issue.  If an individual is not "disabled" or a "qualified individual" under the ADA, then the ADA offers no protection.  See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1998).  This is true even if an individual is subject to a policy that is alleged to be a *per se* violation of the ADA, such as a 100% healed return to work policy.[2]  See Gardenhire v. Manville, 722 F. App'x 835, 840 (10th Cir. 2018); Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 195 (3d Cir. 2009); Henderson v. Ardco, Inc., 247 F.3d 645, 653 (6th Cir. 2001).  By the time a complaint is filed, for each class member that the EEOC chooses to identify in an ADA complaint, at a minimum the EEOC should know or reasonably believe that the individual is "disabled" and a "qualified individual."  When the allegations do not plausibly indicate that an individual is "disabled" or "qualified," then that person is not covered by the ADA, no recovery is possible, and the allegations are likely irrelevant to the complaint.  Given the representations that flow from identifying additional class members, it is unclear why a defendant should be precluded from challenging whether the factual allegations plausibly demonstrate that the additional class members are protected by the ADA.

The EEOC argues that no challenge with respect to additional class members is appropriate because it is not a proxy for any individual claimant or charging party, Rule 23 (regarding class actions) does not apply when a § 706 class claim is pursued, and it is not required to identify each member of the class to recover for the class.  The Court agrees with each of these positions.  See Waffle House, 534 U.S. at 297-98; EEOC v. Bass Pro Outdoor World, LLC, 884 F. Supp. 2d 499, 520 (S.D. Tex. 2012).  However, none of these positions adequately address the issue at hand.

---

[2] The Ninth Circuit has recognized that a "100% healed" or "fully healed" return to work policy is a per se violation of the ADA.  McGregor v. AMTRAK, 187 F.3d 1113, 1116 (9th Cir. 1999).

Prestige does not argue that Rule 23 applies in this case, nor do they attempt to impose any of Rule 23's requirements on the EEOC. Further, Prestige is not arguing that the EEOC stands in the shoes of any ADA class member or charging party, nor are they arguing that the EEOC must identify each member of the class. If Prestige took contrary positions, their motion would be easily denied. However, Prestige is simply raising the question of how to review the allegations concerning the additional class members that the EEOC chose to identify and rely on.

The EEOC also argues that it is inappropriate to determine that someone cannot recover at this stage of the proceedings without the benefit of discovery. The Court agrees with the EEOC to a certain extent. Generally, before a litigant or claimant's claims are finally determined against her, adequate discovery should occur. Cf. Fed. R. Civ. P. 56(d). However, a final determination of eligibility for "class relief" is not the aim of the current motion. The motion before the Court simply challenges the adequacy of the allegations with respect to whether additional class members are either "disabled" or "qualified individuals." Again, at the pleading stage, the EEOC should know whether a class member is "disabled" and have sufficient facts to at least allege on information and belief that the class member is "qualified." It is unclear what discovery needs to occur before the EEOC can satisfy Rule 8 and Rule 12(b)(6) requirements regarding identified class members.

In sum, the Court holds that when the EEOC pursues a class claim under § 706 and chooses to identify "additional class members" who have suffered some form of disability discrimination, the allegations must plausibly show that those "additional individuals" are protected by the ADA.

b.    Sufficiency of Allegations

In order to plead a plausible claim under Title I of the ADA, a complaint must contain sufficient factual allegations for the court to conclude that the plaintiff had a "disability," was a "qualified individual," and suffered discrimination because of the disability. See King v. C&K Mkt., Inc., 2018 U.S. Dist. LEXIS 25352, *8-*9 (E.D. Cal. Feb. 15, 2018); Lyzer v. Caruso Produce, Inc., 2018 U.S. Dist. LEXIS 27670, *4 (D. Or. Jan. 29, 2018); EEOC v. MJC, Inc., 2018 U.S. Dist. LEXIS 11494, *37-*38 (D. Haw. Jan. 24, 2018); Mitchell v. American Airlines, Inc.,

2018 U.S. Dist. LEXIS 2772, *4-*8 (D. Ariz. Jan. 8, 2018); <u>Palma v. County of Stanislaus</u>, 2017 U.S. Dist. LEXIS 209465, *7-*12 (E.D. Cal. Dec. 19, 2017); <u>Lambdin v. Marriott Resorts</u>, 2015 U.S. Dist. LEXIS 6631, *4-*8 (D. Haw. Jan. 21, 2015). A plaintiff has a "disability" or is "disabled" under the ADA if she *inter alia* has "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual . . . ." 42 U.S.C. § 12102(1)(A); <u>Weaving v. City of Hillsboro</u>, 763 F.3d 1106, 1111 (9th Cir. 2014). A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); <u>Smith v. Clark Cnty. Sch. Dist.</u>, 727 F.3d 950, 955 (9th Cir. 2013). "Although the plaintiff bears the ultimate burden of persuading the fact finder that he can perform the job's essential functions . . . 'an employer who disputes the plaintiff's claim that he can perform the essential functions must put forth evidence establishing those functions.'" <u>Bates</u>, 511 F.3d at 991 (quoting <u>EEOC v. Wal-Mart</u>, 477 F.3d 561, 568 (8th Cir. 2007)). A complaint should specifically identify a disability and how that disability affects a major life activity. <u>See</u> <u>Alejandro v. ST Micro Elecs., Inc.</u>, 129 F.Supp.3d 898, 907-08 (N.D. Cal. 2015). For pleading purposes, generally some information regarding the essential functions of the job is required in order to plausibly allege that an individual is "qualified." <u>See</u> <u>MJC, Inc.</u>, 2018 U.S. Dist. LEXIS 11494 at *37-*43; <u>Palma</u>, 2017 U.S. Dist. LEXIS 209465 at *9-*11. "[W]hile an ADA complaint need not include any magical invocation of 'prima face case' language to satisfy Rule 8, . . . [it still] cannot leave [the] opponent and the court with no information at all about whether or how [the affected individual] falls under the ADA." <u>MJC, Inc.</u>, 2018 U.S. Dist. LEXIS 11494 at *37-*38 (quoting <u>Lambdin</u>, 2015 U.S. Dist. LEXIS 6631 at *8) (alterations in original).

       1.    <u>Stephanie Chilton</u>

       The Complaint alleges that: (1) Stephanie Chilton was a Lead Cook at Prestige's Orville facility; (2) on August 27, 2013, Chilton injured her knee and was diagnosed with persistent right patellar dislocation; (3) Chilton submitted a note from her doctor that she could return to work on September 13, 2013; (4) Chilton submitted a leave request on August 30, 2013 and requested accommodations for her knee so that she could continue to heal; (5) on October 1, 2013, Chilton

submitted a doctor's note that she could not return to work until February 1, 2014; (6) Chilton was

terminated in October 2013; and (7) due to a back and hernia injury, Chilton was deemed unable

to work in any capacity under California workers' compensation law on December 29, 2014.

Prestige challenges these allegations by arguing that the major life activity affected is not

identified, the essential functions of the job are not identified, and there is no indication that

Chilton could have performed the essential functions of the job upon her return considering the

workers' compensation determination.

As noted above, an individual is disabled under the ADA *inter alia* when the individual

has a physical or mental impairment that substantially limits one or more major life activities. <u>See</u>

42 U.S.C. 12102(1)(A). The allegations show that Chilton has a diagnosed knee condition. A

knee impairment could substantially limit a number of life activities, including walking, standing,

and lifting, all of which are "major life activities" under the ADA. <u>See</u> 42 U.S.C. § 12102(2)(A).

However, Prestige is correct that the complaint does not actually allege the extent/effect of

Chilton's injury and what major life activity is substantially limited thereby. Because there are

insufficient allegations for the Court to infer what major life activity is substantially limited, the

Complaint does not plausibly allege that Chilton has a "disability" under the ADA. <u>See</u> <u>Fee v.</u>

<u>Mgmt. & Training Corp.</u>, 613 F. App'x 654, 654 (9th Cir. 2015) (affirming dismissal of a

complaint where no allegations indicated that eczema substantially limited a major life activity);

<u>Austin v. City of Oakland</u>, 2018 U.S. Dist. LEXIS 90227, *17-*18 (N.D. Cal. May 30, 2018)

(dismissing an ADA claim *inter alia* because the complaint failed to identify what major life

activities were affected by an alleged disability); <u>Fonseca v. City of Chico</u>, 2014 U.S. Dist. LEXIS

80150, *9-*10 (E.D. Cal. June 9, 2014) (same).

With respect to the workers' compensation determination, the EEOC responds that there is

a passage of time between when Chilton sought accommodation and when she was determined to

be permanently disabled under the workers' compensation laws. This is a valid point. The

Complaint indicates that over a year passed between the time of Chilton's termination in October

2013 and the workers' compensation determination in December 2014. Physical conditions are

not always static, sometimes they improve with time and sometimes they worsen. <u>Cf.</u> <u>Smith</u>, 727

F.3d at 927 ("There is no inconsistency between being totally disabled at a particular point in time and in not being totally disabled at a later point in time.").  Merely because a permanent disability determination was made over a year after Chilton was terminated by Prestige is not a basis for requiring additional allegations regarding Chilton's disability.  It is enough for Chilton to make factual allegations that demonstrate a disability and that the disability substantially affects a major life activity.  Allegations that further address or explain the workers' compensation determination of permanent disability are not necessary at this time.

With respect to the essential functions of the job of Lead Cook, Prestige is correct that the Complaint does not allege any essential functions for that position.  The general rule, as explained above, is that some information regarding essential job functions is necessary in order to plausibly allege "qualified" status.  See MJC, Inc., 2018 U.S. Dist. LEXIS 11494 at *37-*43; Palma, 2017 U.S. Dist. LEXIS 209465 at *9-*11.  The EEOC argues that the essential functions of the job need not be identified because Chilton sought a leave of absence as a reasonable accommodation.  Neither party cites a case that has addressed this argument and the Court has found none.

Under the ADA, it is possible for a leave of absence to be a reasonable accommodation.  See Humphrey v. Memorial Hosps. Ass'n, 239 F.3d 1128, 1135-36 (9th Cir. 2001); Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1247 (9th Cir. 1999).  Further, by definition, if an employee is taking a temporary leave of absence, the employee is not working and is not performing any functions of the job, essential or otherwise.  Thus, at first blush, it would seem that the nature of the accommodation requested necessitates the complete non-performance of the job and would not require a review of any essential job function.  However, the Ninth Circuit has held that a leave of absence may be a reasonable accommodation if the leave "would reasonably accommodate an employee's disability *and permit him, upon his return, to perform the essential functions of the job . . . .*"  Humphrey, 239 F.3d at 1135-36 (emphasis added).  Thus, even when a leave of absence is requested, some review or discussion of essential job functions is generally necessary because the plaintiff must still be able to perform those functions upon her return.  See id.

Because an ADA plaintiff must still be able to demonstrate that she can perform the essential functions of their job at the conclusion of a leave of absence, the Court concludes that an

9

ADA Title I plaintiff must include factual allegations that reasonably demonstrate that she will be able to perform the essential functions of the job upon her return from leave of absence. This generally can be accomplished by identifying the essential function that cannot/could not be adequately performed because of the "disability" and alleging that the disabled individual will be able to perform that function upon the conclusion of the leave of absence.[3] Such allegations recognize the nature of a leave of absence and are sufficient for a court to conclude that a plaintiff is "qualified." A job incumbent like Chilton will know better than any other source how an impairment affects her and which essential function(s) of her job is adversely impacted; it is not onerous to include such factual allegations in a complaint.[4] Here, because no essential functions are identified, and the allegations do not otherwise indicate that she could perform the essential functions of the job upon her return from a leave of absence, the Complaint does not plausibly show that Chilton is a "qualified individual."

In sum, the factual allegations do not plausibly allege that Chilton is covered by the ADA because the allegations do not sufficiently indicate that she has a "disability" or that she is a "qualified individual." Dismissal without prejudice of Chilton as a class member is appropriate. See Fee, 613 F. App'x at 654; Humphrey, 239 F.3d at 1135-36; Bombard, 92 F.3d 560, 563; MJC, Inc., 2018 U.S. Dist. LEXIS 11494 at *37-*43; Palma, 2017 U.S. Dist. LEXIS 209465 at *9-*11; Alejandro, 129 F.Supp.3d at 907-08.

### 2. Amanda Morales

The Complaint alleges that: (1) Morales was a Personal Care Attendant at Prestige's Manteca facility; (2) Morales sustained nerve damage when a patient fell on her in the process of a wheelchair transfer; (3) Morales was placed on "light duty" and restricted to lifting no more than 5 lbs. by the facility's Worker's Compensation physician; (4) Morales's supervisors did not follow

---

[3] As discussed *infra*, this is not the only method of demonstrating that a plaintiff can perform the essential functions of the job.

[4] As an example, it will be assumed that the ability to stand for 3 hours is an essential function of a Lead Cook. The complaint could allege: "Chilton's knee condition prevents her from standing for 3 hours at a time, which is an essential function of a Lead Cook. However, with the reasonable accommodation of a leave of absence, Chilton will be able/could have been able to stand for 3 hours and perform all other essential functions upon conclusion of the leave of absence."

the restrictions placed on her, but told her that the her profession was not one of "light duty," and placed her to work in the kitchens; (5) Morales dropped a heavy pan of bacon while attempting to lift it and had to go the emergency room; (6) Morales was prescribed leave; (7) when leave was set to expire, Morales was still experiencing hurt ribs, difficulty breathing, and pain upon bending, and was pregnant; and (8) Morales was terminated for not attending work, even though she was under doctor's restrictions not to return.

Prestige challenges these allegations by arguing that the essential job functions are not identified, nor do they indicate whether Morales could perform the essential functions of her job with or without accommodation.

Like Chilton, the EEOC argues that since Morales sought a leave of absence as reasonable accommodation, it is unnecessary to identify any essential job functions. As discussed above, the EEOC must include allegations that indicate a class member will be able to perform the essential functions of the job upon her return. This can generally be accomplished by identifying the essential job function(s) that impacted by Morales's impairment and allege that she would be able to perform those functions upon her return. Cf. Humphrey, 239 F.3d at 1135-36.

The Court can reasonably infer at least one essential job function of the Patient Care Attendant from the allegations, the ability to lift and physically move patients. "Lifting" is a "major life activity." See 42 U.S.C. § 12102(2)(A). Further, because the allegations show that Morales was placed on a 5 lbs. lifting restriction by Prestige's own physician, and then dropped the pan of bacon while attempting to lift it, the restriction indicates a substantial limitation. Cf. Thompson v. Holy Family Hosp., 121 F.3d 537, 540 (9th Cir. 1997) (finding no that a 25 lbs. lifting restriction did not substantially limit a major life activity); Haysman v. Food Lion, 893 F.Supp. 1092, 1100 (S.D. Ga. 1995) (finding triable issue material fact regarding a limitation on a major life activity where the plaintiff was restricted to lifting no more than 10 to 15 lbs.). However, the Complaint does not allege that Morales would be able/would have been able to perform the essential function of lifting patients upon her return from a leave of absence. Thus, although at least one essential function can be inferred, the Complaint does not plausibly allege that Morales was a "qualified individual." Dismissal without prejudice of Morales as a class

1 member is appropriate. See Humphrey, 239 F.3d at 1135-36; Bombard, 92 F.3d 560, 563; MJC,
2 Inc., 2018 U.S. Dist. LEXIS 11494 at *37-*43; Palma, 2017 U.S. Dist. LEXIS 209465 at *9-*11.

3                                    3.      Cece Chang

4        The Complaint alleges that:  (1) Chang was a Dietary Aide at Prestige's Linda Vista
5 facility, but was terminated while working in the Laundry Department; (2) Chang was terminated
6 because she could not lift 25 lbs.; (3) Chang requested light duty to accommodate her disability;
7 (4) light duty was denied because there were allegedly no open positions and Prestige refused to
8 evaluate the 25 lbs. restriction, insisting that she had to be able to lift 50 lbs.; (5) in January 2013,
9 Chang reported to Prestige that she was suffering from back pain; (6) Chang submitted a doctor's
10 note for leave with an estimated return to work date of February 18, 2013; (7) on February 18,
11 2013, Chang used her paid time off for March 2013; (8) on May 30, 2013, Chang submitted a
12 doctor's note that permitted her return to work with a 10 lbs. lifting restriction, but Prestige did not
13 engage in an interactive process to find her light duty assignments; (9) on August 8, 2013, Chang
14 submitted a doctor's note that permitted a return to work with a 25 lbs. restriction; (10) on August
15 12, 2013, Chang was terminated because she could not lift 50 lbs.

16        Prestige challenges these allegations by arguing that the essential job functions are not
17 identified, nor do they indicate whether Chang could perform the essential functions of her job
18 with or without accommodation.

19        First, the Court understands that Chang suffers from back pain, but no physical condition is
20 identified and it is unknown whether the back pain substantially limits a major life activity.  The
21 Complaint indicates that she was terminated for not being able to lift 50 lbs.  As noted above,
22 "lifting" is a major life activity, but an inability to lift more than 25 lbs. does not limit the major
23 life activity of lifting.  See Thompson, 121 F.3d at 540; see also Sherrod v. American Airlines,
24 Inc., 132 F.3d 1112, 1120 (5th Cir. 1998) ("[A] restriction on heavy lifting [alone] is insufficient
25 for a reasonable jury to find a substantial limitation on a major life activity.").  Chang's
26 impairment must be more particularly described, as well as the major life activity that the
27 impairment affects.[5]

28
_____
[5] Prestige acknowledged that several of the ten class members had disabilities, but did not acknowledge Chang.

Second, the allegations reasonably suggest that an ability to lift either 25 lbs. or 50 lbs. is an essential function of Chang's job in the Laundry Department. Chang was fired because she could not perform this essential function.[6] The Complaint does not allege that Chang could have met the laundry position's weight lifting requirement either with or without an accommodation. Therefore, the Complaint does not plausibly allege that Chang was a "qualified individual."[7]

In sum, the factual allegations do not plausibly allege that Chang is covered by the ADA because the allegations do not sufficiently indicate that she has a "disability" or that she is a "qualified individual." Dismissal without prejudice of Chang as a class member is appropriate. See Fee, 613 F. App'x at 654; Humphrey, 239 F.3d at 1135-36; Bombard, 92 F.3d 560, 563; MJC, Inc., 2018 U.S. Dist. LEXIS 11494 at *37-*43; Palma, 2017 U.S. Dist. LEXIS 209465 at *9-*11; Alejandro, 129 F.Supp.3d at 907-08.

### 4. Catherine Olver

The Complaint alleges that: (1) Olver was a part-time Personal Care Attendant from January 3, 2014 to July 5, 2014; (2) Prestige's denied Olver's repeated requests for safety equipment to transfer patients safely, which caused her back pain; (3) Olver requested accommodations for a pre-employment back condition and for a "non-invasive procedure;" (4) after the requested accommodation, Olver's hours were reduced and she was terminated for allegedly not meeting credentialing requirements.

Prestige challenges these allegations by arguing that the essential job functions are not identified, they do not indicate whether she could perform the essential functions of her job with or without accommodation, and a "disability" is not identified.

First, the Court agrees with Prestige that a "disability" is not adequately identified. The

---

[6] It is unclear whether the position requires that an employee lift either 25 lbs. or 50 lbs. The Complaint alleges both that Chang was fired because she could not lift 25 lbs. and because she could not lift 50 lbs. See Complaint at ¶ 105.

[7] The Complaint also alleges that Prestige did not engage in an interactive process to find "light duty" positions that would accommodate a lifting restriction. There is no stand-alone cause of action for a "failure to engage in an interactive process" under the ADA. See Stern v. St. Anthony's Health Ctr., 788 F.3d 276, 292 (7th Cir. 2015); Kramer v. Tosco Corp., 233 F. App'x 593, 596 (9th Cir. 2007). Further, reassignment to a vacant position can be a reasonable accommodation. See 42 U.S.C. § 12111(9); Dark v. Curry Cnty., 451 F.3d 1078, 1089 (9th Cir. 2006). However, there is no obligation for an employer to create a new position for the disabled employee. See Wellington v. Lyon Cnty. Sch. Dist., 187 F.3d 1150, 1155 (9th Cir. 1998).

Court understands that Olver suffers from back pain, but it is unknown whether there is an underlying impairment that causes pain and whether the back pain substantially limits a major life activity. Thus, there are insufficient allegations to plausibly indicate that Olver suffers from a "disability."

Second, as discussed above, it appears that one essential function of a Personal Care Attendant is the ability to lift or move a patient. Further, the allegations suggest that it is this essential function that affects Olver's back condition and necessitates an accommodation. However, there are no allegations that Olver can move patients either with or without an accommodation. Thus, the allegations do not sufficiently demonstrate that Olver was "qualified."

Third, although a non-invasive procedure is also identified, the procedure itself is not an impairment; at best, the procedure is treatment for an impairment. Merely identifying a general unknown "procedure" is insufficient to allege a "disability." If the procedure is for an impairment that substantially limits a major life activity, then the impairment and the major life activity need to be identified. See Alejandro, 129 F.Supp.3d at 907-08.

Finally, the EEOC argues that Olver sought a leave of absence and thus, should not have to identify essential functions. However, as with Chilton and Morales, the allegations are insufficient for the Court to conclude that a leave of absence would have permitted Olver to perform the essential functions of a Personal Care Attendant. For example, the EEOC has not expressly identified moving or lifting patients as the essential function that cannot be performed without a leave of absence, nor has it alleged that Olver would have been able to perform that function upon the conclusion of the leave.

In sum, the factual allegations do not plausibly allege that Olver is covered by the ADA because the allegations do not sufficiently indicate that she has a "disability" or that she is a "qualified individual." Dismissal without prejudice of Olver as a class member is appropriate. See Fee, 613 F. App'x at 654; Humphrey, 239 F.3d at 1135-36; Bombard, 92 F.3d 560, 563; MJC, Inc., 2018 U.S. Dist. LEXIS 11494 at *37-*43; Palma, 2017 U.S. Dist. LEXIS 209465 at *9-*11; Alejandro, 129 F.Supp.3d at 907-08.

5.    Generic Cowee

The Complaint alleges that: (1) Cowee was the Lead Housekeeper at Prestige's Marysville facility; (2) on June 28, 2013, Cowee experienced pain in her shoulder, and was later diagnosed with Right Shoulder Adhesive Capsulitis; (3) on October 21, 2013, Cowee utilized FMLA leave through January 14, 2013; (4) Cowee was terminated 2 months after her FMLA expired; (5) at the time of her termination, a doctor's note indicated that she needed 45 days of additional leave; (6) Cowee was cleared to return to work in August 2014 without restrictions.

Prestige challenges these allegations by arguing that they do not indicate whether the shoulder pain limited a major life activity, nor do they indicate that Cowee could perform the essential functions of her job either with or without accommodation.

First, the Complaint identifies Cowee's physical impairment as right shoulder adhesive capsulitis. However, Prestige is correct that there are no allegations that identify the major life activity that was substantially affected by the condition. Without identifying the major life activity that is substantially limited, the allegations do not indicate that Cowee is disabled.

Second, the EEOC again argues that the essential functions of Cowee's job need not be identified because the accommodation Cowee sought was a leave of absence. It is true that no essential job function is identified. As discussed above, although no function of a job is performed by an employee on leave, generally a complaint must identify the essential function that the employee could not perform prior to the leave, but will be able to perform after the leave. Cf. Humphrey, 239 F.3d at 1135-36 (holding that a leave of absence may be a reasonable accommodation if the leave "would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job . . . ."). However, identification of a specific essential function is not necessary because the Complaint's allegations indicate that Cowee could perform every function of the Lead Housekeeper position before and after the requested leave of absence.

The Complaint alleges that Cowee was employed for six years when she was diagnosed with adhesive capsulitis. There are no indications that Cowee was under any restrictions or unable to perform all functions of her job prior to developing this impairment. Thus, whatever the

essential functions of the position of Lead Housekeeper may be, it is reasonably inferred that Cowee was performing them.  Further, unlike Chilton, Morales, and Olver, the Complaint also alleges that Cowee was cleared to return to work without restriction in August 2014.  The reasonable inference from such an allegation is that Cowee's shoulder impairment was either healed or controlled to such a degree that she was again able to perform her job as she did prior to the requested leave of absence.  That is, the allegation shows that Cowee could once again work as a Lead Housekeeper without the need for further accommodation following the leave of absence.  Because of the nature of the accommodation sought, the absence of any indication that Cowee worked with any form of restriction in the years prior to requesting leave, and the allegation that Cowee was cleared to return to work without restriction following the requested period of leave, the Complaint plausibly indicates that Cowee was "qualified" under the ADA.

In sum, the factual allegations show that Cowee is "qualified," but do not show that she has a "disability."  Dismissal without prejudice of Cowee as a class member is appropriate.  See Fee, 613 F. App'x at 654; Bombard, 92 F.3d 560, 563; Alejandro, 129 F.Supp.3d at 907-08.

6. Linda Gagliardi

The Complaint alleges that: (1) Gagliardi was a Registered Nurse-Supervisor at Prestige's Porthaven facility; (2) in early 2013, Gagliardi began experiencing right foot pain; (3) the constant pulling of heavy objects during her shifts exacerbated the pain; (4) Gagliardi previously experienced similar pain in her left foot due to plantar fasciitis; (5) Gagliardi's prior employer granted her leave to have surgery on her left foot, after which she returned without pain or limitations; (6) Gagliardi requested 4 weeks of leave for the surgery and recovery; (7) Prestige never provided Gagliardi with FMLA paperwork and did not discuss accommodation under the ADA; (8) Gagliardi's surgery was moved up prior to Prestige providing leave paperwork or approval; (9) Gagliardi informed Prestige that surgery was moved up and that she would not be reporting for work, but Prestige terminated her in December 2013 when she did not show up for work on the date of her surgery; and (10) Gagliardi began working for another employer in February 2014, about sixty days after her surgery.

Prestige challenges these allegations by arguing that the allegations do not indicate

1   whether the plantar fasciitis limited a major life activity, nor do they indicate that Gagliardi could

2   perform the essential functions of her job either with or without accommodation.

3        First, the Court agrees with Prestige that, although plantar fasciitis appears to be the

4   physical impairment that afflicted Gagliardi's right foot, the Complaint does not adequately

5   identify what major life activity is substantially affected by the condition.  Walking and standing

6   are major life activities, see 42 U.S.C. § 12102(2)(A), and those activities would seem to be

7   naturally impacted by a foot impairment.  However, the Complaint does not discuss walking or

8   standing, rather it only address pain caused by pushing and pulling heavy objects.  In the absence

9   of any cited authority, it does not seem that pulling or pushing heavy objects would be a "major

10  life activity."  Cf. Sherrod, 132 F.3d at 1120 (holding that a restriction on "heavy lifting" alone

11  was not a substantial limitation on a major life activity); Thompson, 121 F.3d at 540 (finding that

12  a 25 lbs. lifting restriction did not substantially limit a major life activity).  Without identification

13  of a major life activity that is substantially affected by the plantar fasciitis, the Complaint does not

14  plausibly allege that Gagliardi has a "disability."

15       Second, the Court disagrees that the Complaint does not adequately allege that Gagliardi

16  could perform the essential functions of her job.  Gagliardi requested leave as an accommodation.

17  Viewed in the light most favorable to the EEOC, the Complaint identifies an essential function of

18  an Registered Nurse - Supervisor at Prestige's facility as the ability to push and pull heavy objects.

19  The Complaint also fairly alleges that this essential function caused an aggravation of the plantar

20  fasciitis and necessitated the leave of absence.  Finally, the Complaint adequately indicates that

21  Gagliardi would have been able to perform heavy pushing and pulling following her leave of

22  absence.  The Complaint alleges that, while at a prior employer, Gagliardi had surgery and a leave

23  of absence that cleared up the same type of pain caused by plantar fasciitis in her left foot.  The

24  Complaint also alleges that Gagliardi required about 60 days of leave from Prestige because 60

25  days is the time that elapsed from the time of her surgery and termination to the time she started

26  working for a new employer.  Therefore, the allegations are sufficient to show that Gagliardi was a

27  "qualified individual."

28

1    In sum, the allegations are sufficient to show that Gagliardi is "qualified," but they do not

2    show that she has a "disability." Dismissal without prejudice of Gagliardi as a class member is

3    appropriate. See Fee, 613 F. App'x at 654; Bombard, 92 F.3d 560, 563; Alejandro, 129 F.Supp.3d

4    at 907-08.

5                    7.    Claimant X

6            The Complaint alleges that: (1) Claimant X is HIV positive; (2) Claimant X was a Dining

7    Room Server/Dietary Aide at Prestige's Mira Loma facility in August 2012; (3) after several

8    months working for Prestige, Claimant X asked his supervisor if he could swap his day shift for an

9    evening shift once every 3 months in order to attend periodic medical appointments; (4) after eight

10   months of missed medical treatments, Claimant X was forced to resign.

11           Prestige challenges these allegations by arguing that they do not identify the essential

12   functions of the job, nor do they indicate that Claimant X could perform them either with or

13   without accommodation.

14           The Court agrees that the essential functions of a Dining Room Server/Dietary Aide are

15   not identified. However, the allegations are sufficient for the Court to conclude that Claimant X

16   could perform the essential functions of a Dining Room Server/Dietary Aide. Claimant X did not

17   request accommodation with respect to the method of performance of any essential function, nor

18   did he request a device or equipment to help him perform a particular function, instead Claimant X

19   merely requested to change shifts once every three months. Thus, for four days out of the year,

20   Claimant X would be performing all functions of the Dining Roomer Server/Dietary Aid as he did

21   on every other day, he would just be performing those functions during the evening shift as

22   opposed to the day shift. Further, there is no indication that Claimant X was not otherwise

23   performing all functions of the position. Therefore, the allegations are sufficient for the Court to

24   conclude that Claimant X is a "qualified individual with a disability." Dismissal of Claimant X as

25   a class member is inappropriate.[8]

26

27   _____
     [8] The Supreme Court has indicated that an HIV infected person is "disabled" under the ADA, even during
     asymptomatic stages of the disease. See Bragdon v. Abbott, 524 U.S. 624, 635-36 (1998); see also Sensing v.

28   Outback Steakhouse of Fla., LLC, 575 F.3d 145, 155 n.14 (1st Cir. 2009) (discussing *Bragdon*); Budnick v. Town of
     Carefree, 518 F.3d 1109, 1115 (9th Cir. 2008) (discussing *Bragdon*).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8.    Anthony Morelli

The Complaint alleges that:  (1) Anthony Morelli worked at Prestige's Vancouver facility as a Cook from April 17, 2014 to July 8, 2014; (2) Morelli suffers from permanent nerve damage that resulted from an injury when he was seventeen years old; (3) Morelli suffers from constant leg and back spasms that make it hard for him to sit or stand in one position for more than ten to fifteen minutes at a time; (4) Morelli receives injections every 4 to 6 months  to ease the pain and spasms; (5) Morelli requires 2 consecutive days of bed rest in order for the injection to be effective; (6) Morelli disclosed during his interview that he need two consecutive days for the injections and could not lift heavy objects; (7) Morelli was assured that he would not have to lift heavy objects; (8) Prestige did not grant Morelli leave unless he could find a replacement for the days need and required Morelli to lift heavy objects; (9) Morelli resigned when Prestige did not provide him leave, and the injections were needed.

Prestige challenges these allegations by arguing that there is no indication that Morelli could perform the essential functions of his job with or without accommodation.  The EEOC argues that identification of the essential functions of the job are not necessary because Morelli requested leaves of absence.

Viewing the allegations in the light most favorable to the EEOC, the Court can reasonably infer that the ability to stand for more than 15 minutes at a time is an essential function of a Cook at Prestige's facility.  The allegations also indicate that Morelli's nerve condition is adversely affected by standing for longer than 15 minutes and lifting heavy objects, but that the nerve condition is treated with injections two to three times per year and with limited leave following the injections.  The fact that Morelli disclosed to Prestige that he had the nerve condition and required the injections and leave, but was still hired and told that no heavy lifting was required, indicate that both Morelli and Prestige believed that Morelli would otherwise be able to perform the essential functions of a Cook.  That is, the allegations indicate that Morelli would be able to return from leave and be able to perform the essential functions of a Cook, including standing for longer than 15 minutes.   Therefore, the allegations are sufficient to plausibly show that Morelli is a "qualified individual with a disability."  Dismissal of Morelli as a class member is inappropriate.

19

1         9.      Cathleen Hackett

The Complaint alleges that: (1) Hackett was a Resident Care Manager at Prestige's Toppenish facility; (2) Hackett sustained a torn rotator cuff after she fell at the Toppenish facility; (3) from April 30, 2007 through May 21, 2007, Hackett obtained FMLA leave and had shoulder surgery; (4) after her return to work, Hackett had an ergonomic work station; (5) the Washington State Department of Labor and Industries found that Hackett suffered from a Permanent Restriction that required modified duty from September 4, 2008 through October 26, 2008; (6) from 2008 through 2011, Hackett used the ergonomic workstation due to the permanent restrictions to her shoulder; (7) in November 2011, Hackett suffered an ankle injury and received FMLA leave from November 29, 2011 through February 2, 2012; (8) when Hackett returned to work, her office had been relocated to a smaller office that was too small for the ergonomic work station; (9) Prestige took away the ergonomic work station and did not return it, despite Hackett's requests that it be returned; and (10) Hackett resigned in June 2012 because the loss of the ergonomic work station exacerbated her shoulder pain.

Prestige challenges these allegations by arguing that there is no indication that the Washington agency's permanent disability determination was related to Hackett's shoulder condition or another injury, there are no allegations that Hackett's injuries substantially limited a major life activity, and there are no allegations that Hackett could perform the essential function of her job upon return from FMLA leave.

First, the Court agrees with Prestige that a major life activity that was substantially limited by the torn rotator cuff is not identified. Without identification of a major life activity that is substantially limited, Hackett does not have a "disability" under the ADA. Although the Washington agency issued a permanent restriction finding, it only required modified duty for about two months, September 5, 2008 to October 26, 2008, and it is unclear what criteria was assessed in making that determination. The ADA requirements for "disability" are not necessarily the same criteria used in other laws or by various state or federal agencies. It is theoretically possible to be disabled for purposes of one statutory scheme but not disabled for others. Cf. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 802-06 (1999) (discussing how to analyze a

inconsistencies between a plaintiff's claims under the ADA when a plaintiff has submitted claims for social security disability insurance); <u>Smith</u>, 727 F.3d at 956 (explaining that <i>Cleveland</i>'s framework applies to inconsistencies between the ADA and non-social security disability claims, including claims under state law). Without more, at this stage simply because Washington found a permanent restriction does not mean that Hackett is "disabled" under the ADA.

Second, the allegations regarding the Washington agency's determination of a permanent restriction was made in 2008. <u>See</u> Complaint ¶ 115. The Complaint discloses other conditions and injuries suffered by Hackett, but not until 2011. Therefore, the Complaint's reference to the Washington agency's determination is fairly and reasonably read to refer to Hackett's shoulder condition only. However, as discussed above, simply because the Washington agency made a restriction determination does not necessarily mean that Hackett is "disabled" under the ADA.

Third, Prestige is correct that the essential functions of a Resident Care Manager are not identified. However, the Complaint alleges that from 2008 to 2011, Hackett successfully utilized the ergonomic work station to perform that job. The Complaint shows that Hackett utilized the ergonomic workstation because of her shoulder condition. There are no indications that when Hackett used the ergonomic work station that she was unable to perform any function, essential or otherwise, of a Resident Care Manager. The ergonomic work station was removed following Hackett's FMLA leave (not ADA leave) in late 2011, and that leave was due to an ankle injury. The Complaint does not indicate that the 2011 FMLA leave had anything to do with Hackett's shoulder condition. Because Hackett's 2011 FMLA leave did not involve her alleged ADA physical impairment, and because Hackett was successfully performing her job with the accommodation of an ergonomic work station from 2008 to 2011, the Complaint plausibly indicates that Hackett could perform the essential functions of her job with the accommodation of an ergonomic workstation. The allegations show that Hackett is a "qualified individual."

In sum, the Complaint plausibly shows that Hackett is a qualified individual, but does not plausibly show that she has a "disability." Dismissal without prejudice of Hackett as a class member is appropriate. <u>See</u> <u>Fee</u>, 613 F. App'x at 654; <u>Bombard</u>, 92 F.3d 560, 563; <u>Alejandro</u>, 129 F.Supp.3d at 907-08.

1          10.     Catherine Johnston

2          The Complaint alleges that: (1) Johnston was a Laundry Worker at Prestige's Porthaven

3    facility; (2) Johnston has  long-term learning disability, PTSD, anxiety, and depression; (3)

4    Johnston's learning disability makes it difficult for her to remember things; (4) Johnston needs a

5    supervisor to write down her tasks rather than to tell her the tasks verbally; (5) Prestige personnel

6    told the Laundry Supervisor that Johnston needed accommodation due to her disability; (6) shortly

7    thereafter, Johnston was terminated.

8          Prestige challenges these allegations by arguing that there are no allegations that Johnson

9    could perform the essential functions of her job with or without accommodation.

10          Prestige is correct that there are no allegations that identify what the essential job functions

11   are, nor are there allegations that Johnston could perform the essential functions of the job.  It is

12   not necessary for the EEOC to identify every essential function, and the functions may even be

13   alleged on information and belief.  What is necessary is the identification of the essential

14   function(s) that necessitate an accommodation in relation to Johnston's disability.  Great detail is

15   not required, but the allegations must permit the Court to reasonably infer that Johnston can

16   perform those essential functions that affect her disability, with the accommodation of written

17   instructions.  But, because no essential functions are identified, the Complaint does not plausibly

18   show that Johnston is "qualified."  Dismissal without prejudice of Johnston as a class member is

19   appropriate.  See Bombard, 92 F.3d 560, 563; MJC, Inc., 2018 U.S. Dist. LEXIS 11494 at *37-

20   *43; Palma, 2017 U.S. Dist. LEXIS 209465 at *9-*11.

21

22

23                                    **ORDER**

24          Accordingly, IT IS HEREBY ORDERD that:

25   1.    Defendants' motion to dismiss is GRANTED in part in that alleged class member Chilton,

26         Morales, Chang, Olver, Cowee, Gagliardi, Hackett, and Johnston are DISMISSED without

27         prejudice as class members;

28   2.    Defendants' motion to dismiss is otherwise DENIED;

22

3. Within fourteen (14) days of service of this order, the EEOC may file an amended complaint that addresses and corrects the deficiencies with respect to alleged class members Chilton, Morales, Chang, Olver, Cowee, Gagliardi, Hackett, and Johnston;

4. If the EEOC does not file an amended complaint, then Defendants shall file an answer within twenty-one (21) days of service of this order;

5. If the EEOC does file an amended complaint, then Defendants shall file an appropriate response within fourteen (14) days of service of the amended complaint.

IT IS SO ORDERED.

Dated:   July 17, 2018   

SENIOR  DISTRICT  JUDGE