FILED

FEB 14 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

Anna Y. Park, SBN 164242
Nakkisa Akhavan, SBN 286260
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
E-Mail: lado.legal@eeoc.gov
(*Additional counsel listed on p.3*)

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Case No.: 1:17-cv-01299-AWI-SAB |
| Plaintiff, | [PROPOSED] |
| | **CONSENT DECREE AND ORDER** |
| vs. | |
| PRESTIGE CARE, INC., PRESTIGE SENIOR LIVING, LLC, CYPRESS POINT VENTURES, LLC, PRESTIGE SENIOR MANAGEMENT, LLC, CARE CENTER (ANCHORAGE), INC., GREEN VALLEY VENTURES, LLC, LAKE HAVASU TOO, LLC, SIERRA VISTA VENTURES, LLC, CHICO VENTURES, LLC, MANTECA VENTURES, LLC, MARYSVILLE VENTURES, LLC, OROVILLE ASSISTED LIVING, LLC, VISALIA VENTURES, LLC, CARE CENTER (LEWISTON), INC., CALDWELL VENTURES, LLC, PARKWOOD MEADOWS, LLC, KALISPELL VENTURES, LLC, HENDERSON VENTURES II, LLC, CARE CENTER (GLISAN), INC., CARE CENTER (HOOD RIVER), INC., CARE CENTER | |

1  (LANECO), INC., CARE CENTER (LINDA )
2  VISTA), INC., CARE CENTER (MENLO )
   PARK), INC., CARE CENTER )
3  (PORTHAVEN), INC., CARE CENTER )
4  (WILLOWBROOK), INC., PCI CARE )
   VENTURE I, INC., SUMMERPLACE )
5  ASSISTED LIVING, LLC, CARE CENTER )
   (CAMAS), INC., CARE CENTER )
6  (CENTRALIA), INC., CARE CENTER )
7  (COLVILLE), INC., CARE CENTER )
   (EDMONDS), INC., CARE CENTER )
8  (HAZEL DELL), INC., CARE CENTER )
   (SULLIVAN PARK), INC., CARE CENTER )
9  (SUNNYSIDE), INC., CARE CENTER )
10 (TOPPENISH), INC., GIG HARBOR )
   VENTURES, LLC, LIVING COURT )
11 VENTURES, LLC, ENUMCLAW )
   VENTURES II, LLC, AND DOES 1-100, )
12 INCLUSIVE, )
                                    )
13         Defendants. )
                                    )
14 _____)

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  | *Additional Counsel for the EEOC:*

2  | Amos Ben Blackman, WA SBN 50331

3  | U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

4  | 909 First Avenue, Suite 400
Seattle, WA 98104

5  | Telephone: (206) 220-6930

6  | Facsimile: (206) 220-6911
E-Mail: amos.blackman@eeoc.gov

7  |

8  | *Counsel for Defendants (except Defendant Cypress Point Ventures, LLC):*

9  | Paul M. Ostroff (CSB No. 67054)

10 | ostroffp@lanepowell.com
Beth Golub Joffe (*Admitted Pro Hac Vice*)

11 | joffeb@lanepowell.com
**LANE POWELL PC**

12 | 601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158

13 | Telephone: 503.778.2100

14 | Facsimile: 503.778.2200

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1    Plaintiff U.S. Equal Employment Opportunity Commission (the "EEOC" or

2  "Commission") and Defendants Prestige Care, Inc., Prestige Senior Living, LLC, Prestige Senior

3  Management, LLC, Care Center (Anchorage), Inc., Green Valley Ventures, LLC, Lake Havasu

4  Too, LLC, Sierra Vista Ventures, LLC, Chico Ventures, LLC, Manteca Ventures, LLC,

5  Marysville Ventures, LLC, Oroville Assisted Living, LLC, Visalia Ventures, LLC, Care Center

6  (Lewiston), Inc., Caldwell Ventures, LLC, Parkwood Meadows, LLC, Kalispell Ventures, LLC,

7  Henderson Ventures II, LLC, Care Center (Glisan), Inc., Care Center (Hood River), Inc., Care

8  Center (Laneco), Inc., Care Center (Linda Vista), Inc., Care Center (Menlo Park), Inc., Care

9  Center (Porthaven), Inc., Care Center (Willowbrook), Inc., PCI Care Venture I, Inc.,

10  Summerplace Assisted Living, LLC, Care Center (Camas), Inc., Care Center (Centralia), Inc.,

11  Care Center (Edmonds), Inc., Care Center (Hazel Dell), Inc., Care Center (Sullivan Park), Inc.,

12  Care Center (Sunnyside), Inc., Care Center (Toppenish), Inc., Gig Harbor Ventures, LLC, Living

13  Court Ventures, LLC, and Enumclaw Ventures II, LLC (collectively, "Defendants") hereby

14  stipulate and agree to entry of this Consent Decree ("Decree") to resolve the Commission's

15  Complaint against Defendants in U.S. Equal Employment Opportunity Commission v. Prestige

16  Care, Inc. et al., Case No. 1:17-cv-01299-AWI-SAB (E.D. Cal.) (the "Action").

17    On September 28, 2017, the Commission filed the Action in the United States District

18  Court, Eastern District of California, for violations of the Americans with Disabilities Act of

19  1990, as amended, 42 U.S.C. § 12101 et seq. (the "ADA"), on behalf of a class of aggrieved

20  individuals, including Charging Party Mitchell Miller, individual employees named in the

21  Complaint, and unnamed, similarly-situated class members. The Action alleges that Defendants

22  maintain policies and practices that required that all employees be "100% fit for duty"/"100%

23  healed" and perform "100% of job duties," and that Defendants fail to provide leave as an

24  accommodation except that which qualified as personal leave or under the Family and Medical

25  Leave Act ("FMLA"). The Action brings three counts under the ADA, alleging: (1) that

26  Defendants' practices constitute an unlawful qualification standard because it barred a class of

27  qualified individuals with disabilities from working unless they could perform all job functions,

28  including marginal job functions, without a reasonable accommodation; (2) that Defendants fail

1  to provide reasonable accommodations to a class of qualified individuals with disabilities

2  pursuant to these policies and practices; and (3) that Defendants specifically failed to hire

3  Charging Party Mitchell Miller because of his disability and/or because it regarded him as

4  disabled. Defendants deny each of the claims and allegations in the Complaint.

5            **I.**      **PURPOSES AND SCOPE OF THE DECREE**

6        A.     The EEOC and Defendants (collectively, the "Parties") agree to conclude fully

7  and finally all claims arising out of the Action and Mr. Miller's charge of discrimination filed

8  with the EEOC by entry of the Consent Decree ("Decree"). The Decree is binding on and

9  enforceable against Defendants and their subsidiaries, successors (as limited as set forth in

10  Section I.F below), acquired entities (but only to the extent defined and limited as set forth in

11  Section I.G below), and assigns, to the extent permitted by law.

12        B.     The Parties have entered into the Decree for the following purposes:

13            1.     To further the objectives of equal employment opportunity as set forth in

14  the ADA;

15            2.     To provide appropriate monetary and injunctive relief;

16            3.     To ensure a work environment free from discrimination, especially as it

17  relates to disability discrimination;

18            4.     To ensure Defendants' policies, procedures, and practices comply with

19  and achieve the objectives of the ADA;

20            5.     To ensure Defendants' managers and employees understand their rights

21  and responsibilities under the ADA and Defendants' policies, procedures, and practices;

22            6.     To ensure Defendants' managers and employees have access to

23  appropriate and effective mechanisms for handling requests for reasonable

24  accommodation and complaints of disability discrimination in the workplace;

25            7.     To ensure appropriate record keeping, reporting, and monitoring; and

26            8.     To avoid the expensive and protracted costs incident to litigation of the

27  Action.

28

1     C.     The Decree will be implemented by Defendants and Defendants' facilities on a

2 nationwide basis, including facilities operated as a corporate entity not named as a defendant in

3 the Action but for which Defendant(s) participate in, approve and/or ratify the facilities' policies,

4 procedures, and practices regarding employment discrimination on the basis of disability.

5     D.     The Decree is not a finding on the merits of this case and shall not be construed as

6 an admission by Defendants of a violation of the ADA.

7     E.     The Decree in no way affects the EEOC's right to bring, process, investigate or

8 litigate other charges that may be in existence or may later arise against one or more Defendants

9 in accordance with EEOC procedures.

10     F.     As used in this Decree, the term "successor" is limited as follows:

11     1.     This Decree shall not be applicable to nor shall it be binding on any

12     individual facility, employer, entity or operation[1] which is sold, leased, conveyed, or

13     otherwise transferred to an entity or person that is (1) not named as a Defendant in the

14     Action as of the date of the entry of this Decree; or (2) that is not under the substantial

15     ownership or control of a party named as a Defendant in this Action as of the date of

16     entry of this Decree. This Section I.F.1 does *not* apply to Prestige Care, Inc., Prestige

17     Senior Living, LLC, and Prestige Senior Management, LLC.

18     2.     The injunctive relief provisions of this Decree, set forth in Section VIII in

19     its entirety, Section IX in its entirety, Section X.A, Section X.B, and Section X.C, shall

20     not be applicable to nor shall they be binding on successors to Prestige Care, Inc.,

21     Prestige Senior Living, LLC, and Prestige Senior Management, LLC after three (3)

22     years from the Effective Date or with respect to the sale conveyance or transfer of all or

23

24

---

25 [1] Care Center (Anchorage), Inc., Green Valley Ventures, LLC, Lake Havasu Too, LLC, Sierra Vista Ventures, LLC, Chico Ventures, LLC, Manteca Ventures, LLC, Marysville Ventures, LLC, Oroville Assisted Living, LLC, Visalia Ventures, LLC, Care Center (Lewiston), Inc., Caldwell Ventures, LLC, Parkwood Meadows, LLC, Kalispell

26 Ventures, LLC, Henderson Ventures II, LLC, Care Center (Glisan), Inc., Care Center (Hood River), Inc., Care Center (Laneco), Inc., Care Center (Linda Vista), Inc., Care Center (Menlo Park), Inc., Care Center (Porthaven),

27 Inc., Care Center (Willowbrook), Inc., PCI Care Venture I, Inc., Summerplace Assisted Living, LLC, Care Center (Camas), Inc., Care Center (Centralia), Inc., Care Center (Edmonds), Inc., Care Center (Hazel Dell), Inc., Care

28 Center (Sullivan Park), Inc., Care Center (Sunnyside), Inc., Care Center (Toppenish), Inc., Gig Harbor Ventures, LLC, Living Court Ventures, LLC, and Enumclaw Ventures II, LLC.

1    substantially all of it or their assets which is closed or otherwise consummated more

2    than three (3) years after the Effective Date, the date of such closing or other

3    consummation, whichever is later. Prestige Care, Inc., Prestige Senior Living, LLC, and

4    Prestige Senior Management, LLC shall provide the EEOC with notice of such a

5    transaction no later than thirty (30) day prior to such closing or other consummation.

6         3.    The monetary relief provisions of this Decree, set forth in Section VII in

7    its entirety, shall be applicable to and shall be binding on Prestige Care, Inc., Prestige

8    Senior Living, LLC, and Prestige Senior Living, LLC, and their subsidiaries, legal

9    successors, and assigns, for the Term of the Decree.

10        4.    Nothing contained in Sections I.F.1, I.F.2, and I.F.3 above shall limit or

11   restrict the reduction in the duration of the Decree as provided in Sections IV.B and

12   VII.A.1.c below.

13   G.    This Decree shall apply to facilities acquired by a party named as a Defendant in

14   the Action as of the date this Decree is entered (or a successor thereto, as limited as set forth in

15   Section I.F above), and for a period of two years thereafter. When a facility is acquired during

16   this two-year period, the Decree shall be of no force or effect until three months have elapsed

17   after the defendant has assumed operational control of the facility. This three-month period is

18   provided to allow the Defendant to implement such changes as may be required in the

19   management of the facility to comply with this Decree. Facilities acquired more than two years

20   after entry of the Decree will not be covered by this Decree.

21                          **II.    RELEASE OF CLAIMS**

22   A.    The Decree fully and completely resolves all issues, claims and allegations raised

23   by the EEOC against Defendants in the Action, including those asserted by the EEOC for and on

24   behalf of all claimants, unidentified and not yet identified, in the Action.

25   B.    Nothing in the Decree shall be construed to limit or reduce Defendants'

26   obligations to comply fully with the ADA or any other federal employment statute.

27

28

C.     Nothing in the Decree shall be construed to preclude any party from bringing suit to enforce the Decree in the event that any party hereto fails to perform the promises and representations contained herein.

## III.     JURISDICTION AND AUTHORITY OF THE COURT

A.     The Court has jurisdiction over the Parties and the subject matter of the Action. The Action asserts claims that, if proven, would authorize the Court to grant the equitable relief set forth in the Decree.

B.     The terms and provisions of the Decree are fair and reasonable.

C.     The Decree conforms with the Federal Rules of Civil Procedure and ADA and is not in derogation of the rights or privileges of any person.

D.     The Court shall retain jurisdiction of the Action during the duration of the Decree for the purposes of entering any order, judgment, or decree that may be necessary to implement the relief provided herein.

## IV.     EFFECTIVE DATE AND DURATION OF DECREE

A.     The provisions and agreements contained herein are effective immediately upon the date which the Decree is entered by the Court (the "Effective Date").

B.     Except as otherwise provided herein, the Decree shall remain in effect for five (5) years measured from the Effective Date (the "Term").

## V.     MODIFICATION AND SEVERABILITY

A.     The Decree constitutes the complete understanding of the Parties with respect to the matters contained herein.  No waiver, modification, or amendment of any provision of the Decree will be effective unless made in writing and authorized by a representative of each of the Parties.

B.     If one or more of the provisions of the Decree are rendered unlawful or unenforceable, the Parties shall make good faith efforts to agree upon appropriate amendments to the Decree in order to effectuate the purposes of the Decree.  In any event, the remaining provisions will remain in full force and effect unless the purposes of the Decree cannot, despite the Parties' best efforts, be achieved.

C.    By mutual agreement of the Parties and with the approval of the Court, the Decree may be amended or modified in the interests of justice and fairness in order to effectuate the provisions of the Decree.

## VI.    COMPLIANCE AND DISPUTE RESOLUTION

A.    The Parties expressly agree that if the EEOC has reason to believe that one or more Defendants have failed to comply with any provision of this Decree, the EEOC may bring an action before this Court to enforce the Decree. Prior to initiating such action, the EEOC will notify Defendant(s) and/or its/their legal counsel of record, in writing, of the nature of the dispute. This notice shall specify the particular provision(s) of the Decree that the EEOC believes has been breached. Absent a showing that the delay will cause irreparable harm, the Parties shall have forty-five (45) days[2] to attempt to resolve or cure any alleged non-monetary breach and shall have fourteen (14) days to attempt to resolve or cure any alleged monetary breach. If a Defendant identifies an issue, claim or dispute concerning the administration of this Decree, or the actions of the EEOC under the Decree, it may notify the EEOC of the existence of such a dispute, and the Parties shall have forty-five (45) days to attempt to resolve or cure any such issue, claim or dispute.

B.    The Parties agree to cooperate with each other and use their best efforts to resolve any dispute that arises under this section.

C.    After forty-five (45) days have passed with respect to any alleged non-monetary breach, or fourteen (14) days have passed with respect to any alleged monetary breach, if the Parties have reached no resolution or agreement to extend the time further, either Party may petition this Court for resolution of the dispute, seeking all available relief, including an extension of the Term of the Decree and any other relief the court deems appropriate.

D.    If the EEOC and/or Defendant(s) has reason to believe that the Claims Administrator or the EEO Monitor has failed to fulfill any of her or his obligations under this Decree, it/they shall notify the other Party(ies) and/or its/their legal counsel of record, in writing,

---

[2] Time periods specified in the Decree shall be computed in accordance with Fed. R. Civ. P. 6(a).

1   of the nature of the alleged failure. This notification shall specify the particular provision(s) of

2   the Decree that the Party(ies) believe the Claims Administrator or EEO Monitor has failed to

3   fulfill. The Parties shall then have thirty (30) days during which they shall cooperate and attempt

4   to ensure the Claims Administrator or EEO Monitor cures the alleged failure. If the Parties are

5   unable to ensure that the Claims Administrator or EEO Monitor has cured or will cure the

6   alleged failure after those thirty (30) days, they shall replace the Claims Administrator in

7   accordance with Section VII.B.1 or the EEO Monitor in accordance with Section IX.B.1.

8
## VII.  MONETARY RELIEF

9        A.    In settlement of this lawsuit, Defendants shall pay a total of $2,000,000.00 (two

10   million dollars and zero cents) (the "Damages Fund"). The Damages Fund is inclusive of all

11   back-pay, compensatory damages, and punitive damages monetary relief, as further defined and

12   specified below. The EEOC has full and complete discretion under the terms of the Decree to

13   determine who is a claimant and to determine the amount and characterization of payment, if

14   any, to the Charging Party and claimants from the Damages Fund.

15             1.   Defendants' Deposit of Damages Fund Monies in the Escrow Account

16                  a.   No later than the Effective Date, Defendants shall create an escrow

17   account for the deposit of the Damages Fund monies (the "Escrow Account").

18                  b.   Defendants shall make deposits in the Escrow Account as follows:

19                     i.   No later than January 31, 2020, Defendants shall make a

20   deposit of no less $400,000.00 into the Escrow Account or, if the Escrow

21   Account has not been established, in the trust account of its counsel of

22   record; and Defendants' counsel of record shall transfer the $400,000.00

23   into the Escrow Account no later than the Effective Date;

24                    ii.   No later than January 31, 2021, Defendants shall make a

25   deposit of no less $400,000.00 into the Escrow Account;

26                   iii.   No later than January 31, 2022, Defendants shall make a

27   deposit of no less $400,000.00 into the Escrow Account;

28

iv.    No later than January 31, 2023, Defendants shall make a deposit of no less $400,000.00 into the Escrow Account;

v.    No later than January 31, 2024, Defendants shall make a deposit of no less $400,000.00 into the Escrow Account.

c.    In the event that Defendants deposit the entirety of the Damages Fund into the Escrow Account prior to January 31, 2024, the Term of the Decree shall be reduced by the number of months the final deposit is made in advance of the due date for the final deposit (January 31, 2024), but in no event, will the Term be reduced by more than twenty-four (24) months.  For example, if Defendants make a final deposit satisfying the Damages Fund on January 1, 2023, the Term of the Decree shall be reduced by twelve (12) months.

d.    Within seven (7) days of making any deposit in the Escrow Account, Defendants shall notify the EEOC of the amount of the deposit and the current balance of the Escrow Account.  Within forty-five (45) days of making any deposit in the Escrow Account, Defendants shall provide the EEOC with the most recent account statement for the Escrow Account reflecting the deposit.

e.    Any expenses, costs or fees associated with the opening, maintenance, or administration of the Escrow Account shall be borne by Defendants and not subtracted from the funds deposited therein or the Damages Fund.

2.    Monetary Relief for Charging Party and Identified Claimants

a.    In settlement of the claims of Charging Party Mitchell Miller and the claimants the EEOC has presently identified to Defendants (collectively referred to as the "Identified Claimants"), the EEOC has full and complete discretion under the terms of the Decree to determine the amount and characterization of payment, if any, to an Identified Claimant.  The EEOC will make a determination of eligibility of any claimant to receive any monies based upon information the EEOC receives from the Claims Forms and any other

information it has available to it making an eligibility determination.

b.      The EEOC shall provide to Defendants a distribution list designating each Identified Claimant's portion and amount of monetary relief, if any, as well as the name and address to which each Identified Claimant's portion and amount of monetary relief shall be delivered.

c.      Within thirty (30) days of receiving the EEOC's Identified Claimants distribution list, Defendants shall have a check payable from the Escrow Account sent, via first class mail, in the amount designated in the EEOC's distribution list, to the Identified Claimants. Within thirty (30) days of mailing the aforementioned payments, Defendants shall submit copies of the checks and any related correspondence to the EEOC, as well as a report regarding the mailing of the checks to the EEOC. The report shall show the amount of the check, the date the check was mailed, the person to whom the check was mailed, and the address to which the check was mailed. Each check will remain valid for 180 days. If any such check is returned or known to be lost or destroyed, or not negotiated within 180 days, Defendants shall notify the EEOC and cooperate with the EEOC in reissuing the check. Defendants will not be obligated to reissue a check to a Claimant more than one (1) time. The Parties shall cooperate to endeavor that all Claimants receive the amounts due to them.

d.      Payments to the Identified Claimants will be made in amounts to be designated at the full and complete discretion of the EEOC, which amounts will be paid to each by one check issued for damages in the form of compensatory damages, and for this payment Defendants, in the ordinary course, shall prepare and distribute 1099 tax reporting forms to the Identified Claimants, if required by law, and shall make any appropriate reports to the Internal Revenue Service and other tax authorities. Within thirty (30) days of the issuance of any 1099, Defendants shall provide copies and any related correspondence to the EEOC.

3.    Monetary Relief for Unidentified Claimants

a.    Monetary relief shall also be distributed to additional claimants who are not presently identified to Defendants (the "Previously Unidentified Claimants"). These claimants will be identified through the claims administration process set forth in Section VII.B below. The EEOC has full and complete discretion under the terms of the Decree to determine the amount and characterization of payment, if any, to a Previously Unidentified Claimant.

b.    Payment, if any, to Previously Unidentified Claimants shall be triggered by the EEOC's issuance to Defendants of a Previously Unidentified Claimants distribution list designating Previously Unidentified Claimants' amounts and designations of monetary relief as well as the names and addresses to which the checks are to be delivered. The EEOC may continue to issue Previously Unidentified Claimants distribution lists until the Damages Fund is exhausted, but in no event, not later than the end of the Term of the Decree.

c.    Within thirty (30) days of receiving a Previously Unidentified Claimants distribution list, Defendants shall have checks payable from the Escrow Account sent, via first class mail, in the amounts designated in the Previously Unidentified Claimants distribution list to the Previously Unidentified Claimant at the addresses provided in the distribution list. Within thirty (30) days of mailing the aforementioned payments, Defendants shall submit copies of the checks and any related correspondence as well as a report regarding the mailing of the checks to the EEOC. The report shall show the amount of the check, the date the check was mailed, the person to whom the check was mailed, and the address to which the check was mailed. Each check will remain valid for 180 days. If any such check is returned or known to be lost or destroyed, or not negotiated within 180 days, Defendants shall notify the EEOC and cooperate with the EEOC in reissuing the check. Defendants will not be obligated to reissue a check to a Claimant more than one (1) time, unless the need to reissue the check resulted

from Defendant(s)' error. The Parties shall cooperate to endeavor that all Claimants receive the amounts due to them.

d.      Payments to the Previously Unidentified Claimants will be made in amounts to be designated at the full and complete discretion of the EEOC, which amounts will be paid to each by one check for damages in the form of compensatory damages, if any, and for this payment Defendants, in the ordinary course, shall prepare and distribute 1099 tax reporting forms to the Previously Unidentified Claimants, if required by law, and shall make any appropriate reports to the Internal Revenue Service and other tax authorities. Within thirty (30) days of the issuance of any 1099 form, Defendants shall provide copies and any related correspondence to the EEOC.

4.     Presently Unavailable Funds in the Escrow Account

a.      Due to Defendants' schedule of deposits of damages fund monies in the Escrow Account set forth in Section VII.A.1.b above, the EEOC may determine that Identified Claimants and/or Previously Unidentified Claimants are due amounts that are not presently available in the Escrow Account.

b.      In addition to the distribution lists described above, the EEOC may, after Defendants make a deposit into the Escrow Account, issue additional distributions lists designating additional payments to be made in accordance with the procedures above to Claimants who previously received payments.

c.      In the event that the EEOC issues a distribution list that specifies amounts due to Claimants that exceed the funds presently available in the Escrow Account, Defendants shall promptly notify the EEOC of the amount of the overage, and the EEOC will reissue the distribution list with revised amounts.

B.     Claims Administration

1.     Claims Administrator. Within thirty (30) days of the Effective Date, Defendants shall hire and appoint a specific professional individual or organization ("Claims Administrator"), approved by the EEOC, to oversee the payment of the

Damages as designated by the EEOC pursuant to the Decree. If the Claims
Administrator initially appointed by Defendants thereafter declines to serve or to carry
out its duties under the Decree, Defendants shall, within fourteen (14) days, notify the
EEOC in writing of the need for a replacement Claims Administrator, and within ten
(10) days the EEOC shall provide Defendants with three (3) new Claims Administrators
from which Defendants shall select a replacement. Defendants shall advise the Claims
Administrator (and any replacement for her or him) that she or he has access to the
EEOC and that she or he shall work with the EEOC to identify eligible Claimants in
accordance with the EEOC's criteria.

2.   Potential Claimant List. Within sixty (60) days of the Effective Date,
Defendants shall provide to the Claims Administrator a list of all employees who at any
time between July 15, 2014 and December 31, 2018 were terminated, either voluntarily
or involuntarily, who had a mental or physical impairment or condition, of which a
Defendant knew (as defined below) at the time of his/her termination. The list provided
by Defendants shall include each employee's and/or former employee's last known
address, phone number(s), and email address.

a.   As used in this Section VII.B.2, "a mental or physical impairment
or condition, of which a Defendant knew" includes individuals who, within one
year of their separation from employment, filed a written claim for workers'
compensation benefits or short-term disability benefits, requested medical leave
pursuant to the Family and Medical Leave Act or similar state laws, requested
accommodation of a mental and/or physical impairment, or whose personnel
records maintained by the Defendant reflect that the individual had a disability
within the meaning the Americans With Disabilities Act. Defendants may limit
their search for this information to the following: (1) personnel records
maintained by the Defendants in the course and scope of its business which
reflect, on their face, that the individual had a physical or mental impairment or
condition; (2) filings of workers' compensation claims as evidenced by the

submission of a California DWC 1 or similar form in another state concerning the Defendant who was his/her employer within the 12 months preceding the termination; (3) entries of recordable injuries in an OSHA 300 log within 12 months preceding of the date of termination; (4) filings of claims for disability benefits with the California Employment Development Department, or similar state agency, of which the Defendants had actual notice, within 12 months preceding the termination; (5) submitted a Department of Labor Form WH 380E or similar form under similar state laws, of which the Defendants had actual notice, within 12 months preceding the termination.

b. EEOC retains sole discretion to identify Previously Unidentified Claimant(s) based on information available to it, including by not limited to the Potential Claimant List, and any monetary amounts for which each may be eligible, and nothing in this section or any other precludes the EEOC from determining that a Previously Unidentified Claimant is an eligible claimant.

3. <u>Claims Notice Process</u>. The EEOC shall develop a questionnaire and notice letter template, and it will provide them to the Claims Administrator. The EEOC will provide written notice to Defendants' counsel that it has provided said questionnaire and notice letter as required. Within thirty (30) days of receipt by the Claims Administrator of the EEOC's questionnaire and notice letter, the Claims Administrator shall, for each employee and/or former employee identified under in Section VII.B.2 above, provide notice as follows:

a. Send a questionnaire and notice letter (as provided by the EEOC) via first class mail to the most recent address of the Previously Unidentified Claimant as determined by the Claims Administrator through research and best efforts, including a search of a database such as Accurint (i) notifying the Previously Unidentified Claimant of his or her ability to file a claim for monetary relief and re-apply for employment; (ii) providing the Previously Unidentified Claimant with instructions on how to file a claim on-line with the Claims

Administrator; (iii) providing the Previously Unidentified Claimant with the opportunity to seek assistance in completing the on-line claim; and (iv) enclosing a claim form or forms.

b.  Every forty-five (45) days following receipt by the Claims Administrator of the EEOC's initial questionnaire and notice letter, the Claims Administrator shall provide to the EEOC notification that the Claims Administrator mailed a questionnaire and notice letter to each Previously Unidentified Claimant. This notification shall include the name and address of each Previously Unidentified Claimant(s) to which the questionnaire and notice letter were sent.

c.  Should any correspondence to a Previously Unidentified Claimant from the Claims Administrator be returned undeliverable, within twenty-one (21) days the Claims Administrator shall notify the EEOC that the correspondence has been returned. The EEOC shall thereafter undertake any efforts it deems appropriate to locate the Previously Unidentified Claimant. If the EEOC is able to procure another address or means of contact for the Previously Unidentified Claimant, it shall provide this information to the Claims Administrator and the Claims Administrator will make one additional attempt to provide the questionnaire and notice letter to the Previously Unidentified Claimant.

4.  Claims Distribution Process.

a.  At forty-five (45) day intervals after mailing the first group of questionnaires and notice letters, the Claims Administrator shall forward to the EEOC any submitted claim forms received from any Previously Unidentified Claimant. The Claims Administrator shall provide Defendants and the EEOC electronic access to the claims forms filed online.

b.  The EEOC shall have the sole discretion to make the final determination whether a potential Previously Unidentified Claimant is an eligible claimant. The EEOC shall have the sole discretion to designate the amount of the

-17-
[PROPOSED] CONSENT DECREE AND ORDER

1    Damages Fund to be distributed to each eligible claimant. The EEOC will make a

2    determination of eligibility based upon information it receives from the claims

3    forms and any other information it has available to it making an eligibility

4    determination.

5         c.     On a monthly basis after issuance of the first Distribution List, the

6    Claims Administrator shall provide the EEOC with a copy of each canceled check

7    issued in accordance with Section VII.A.3.c above, and identify any check

8    returned, known to be lost or destroyed, or not negotiated within 180 days of

9    issuance, to enable the Parties to track the balance of the Damages Fund.

10        d.     The EEOC may subsequently issue additional distribution list(s),

11   as necessitated by reasons including but not limited to, receipt of additional

12   claims forms or further notice from Defendants or their Claims Administrator that

13   any check issued to an eligible Claimant was returned, known to be lost or

14   destroyed, or not negotiated within 180 days after issuance.

15        e.     On a quarterly basis, continuing until the Damages Fund is

16   exhausted, the Claims Administrator will notify the EEOC of any remaining

17   balance in the Class Fund.

18        f.     The EEOC may subsequently issue additional distribution list(s)

19   for a period of one (1) year and nine months from the final deposit of settlement

20   monies by Defendants.

21        g.     Prior to the expiration of the Decree, the EEOC shall designate a

22   "Final Distribution List" which may include, in addition to any additional eligible

23   claimants to receive payments, any additional amounts to be paid to eligible

24   claimants who previously received payments.

25        h.     No further distribution list shall be issued by the EEOC after the

26   Final Distribution List is provided to the Claims Administrator. However, if any

27   such check issued in accordance with the Final Distribution List is returned,

28   known to be lost or destroyed, or not negotiated within 180 days, the Claims

-18-
[PROPOSED] CONSENT DECREE AND ORDER

1  Administrator shall notify the EEOC and cooperate with the EEOC in reissuing

2  the check. There is no obligation to reissue a check more than one (1) time, unless

3  the need to reissue the check resulted from Defendant(s)'s error. The Parties shall

4  cooperate to endeavor that all Claimants receive the amounts due to them.

5  i.   No fewer than 180 days and no more than one year after issuance

6  of the payments in accordance with the Final Distribution List, any remaining

7  monies in the Class Fund shall be donated to a charity that promotes equal

8  opportunities for people with disabilities. The monies will be donated under the

9  name of Prestige Care, Inc. pursuant to this term of the Decree. Notice shall be

10  given to the EEOC that payment was made along with a copy of the check and

11  correspondence.

12  **VIII.   GENERAL INJUNCTIVE RELIEF**

13  A.  Non-Discrimination. Defendants, their officers, owners, managers, subsidiaries,

14  and successors shall: (a) not discriminate against persons in violation of the ADA, including on

15  the basis of their disabilities, perceived disabilities and/or records of disabilities; (b) not engage

16  in any action, policy or practice that discriminates against any employee in violation of the

17  ADA, including on the basis of their disabilities, perceived disabilities and/or records of

18  disabilities; (c) engage in the interactive process with each qualified individual with a disability

19  in conformity with the ADA; and (d) provide a reasonable accommodation to each qualified

20  individual with a disability, unless Defendants demonstrate that the accommodation would

21  impose an undue hardship on the operation of their business.

22  B.  Retaliation. Defendants, their officers, owners, managers, subsidiaries, and

23  successors shall not retaliate against any current or former employee or applicant of Defendants

24  or its successors because she or he has, in the past, or during the term of the Decree:

25  (a) participated in any manner in any investigation (including, without limitation, any internal

26  investigation undertaken by Defendants or its successors) or proceeding in connection with the

27  Action or the charge of discrimination from which it arose; (b) was identified as a possible

28  witness or claimant in the Action or under the Decree; (c) sought and/or received any relief or

1  otherwise exercised rights under the Decree; or (d) applied for employment following receipt of

2  a notice based on the provisions of the Decree.

3        C.    "100% of Job Duties" and "100% Healed" Policies and Practices.  Defendants,

4  their officers, owners, managers, subsidiaries, and successors, shall not implement any policy,

5  procedure, or practice whereby they require any employee or group of employees to fulfill

6  "100% of job duties" and/or return to work without medical restrictions ("100% fit for

7  duty"/"100% healed"), except that nothing in this provision forecloses Defendants' ability to

8  make only reasonable accommodations and to consider the individual's ability to perform the

9  essential job functions with such reasonable accommodation.

10        D.    Leave, Light Duty, and Reassignment as Reasonable Accommodations.

11  Defendants, their officers, owners, managers, subsidiaries, and successors, shall engage in the

12  interactive process to identify and provide reasonable accommodations, as required by the ADA,

13  including where appropriate consideration of leave an accommodation, light duty, and/or

14  temporary or permanent job reassignment.

15        E.    Selection/Retention Policies.  Defendants, their officers, owners, managers,

16  subsidiaries, and successors, shall not implement any policy, procedure, or practice whereby an

17  employee's or applicant's disability or record of a disability is a factor in the employee's or

18  applicant's selection for a layoff/reduction-in-force or non-retention in connection with an

19  acquisition or merger, except that nothing in this provision forecloses Defendants' ability to

20  make only reasonable accommodations and to consider the individual's ability to perform the

21  essential job functions with such reasonable accommodation.

22        IX.    **SPECIFIC INJUNCTIVE RELIEF**

23        A.    Reinstatement/Reapplication

24            1.    In conjunction with the mailing of monetary relief, Claimants will be

25  notified that they are invited to apply for employment with Defendants, including but

26  not limited to the position(s) they previously held.  The notice, which shall be drafted

27  by Defendants and approved by the EEOC, shall inform Claimants where Defendants

28  publicize the availability of vacant positions, specifically indicate that anyone who

may have felt they were terminated or excluded from employment due to a mental or physical impairment is encouraged to apply, state that any past policy or practice that required an employee with a disability to fulfill non-essential job functions (100% of job duties) and/or have no medical restrictions (100% fit for duty/100% healed) before being permitted to return to work has been eliminated; and briefly explain how applicants and employees may seek reasonable accommodation when applying and/or commencing employment. Defendants shall provide the EEOC the draft notice within fourteen (14) days of receiving the distribution list, and the EEOC shall respond within fourteen (14) days of receipt. If the EEOC does not respond within fourteen (14) days, Defendants may use the notice as drafted.

      2.    Within ninety (90) days of receiving each distribution list, Defendants shall review their personnel files and HRIS systems and eradicate any "no rehire" notation or other indication that would prevent an application for employment from the Claimants from being considered equally with other applicants. If Defendants believe there is cause to maintain a "no rehire" notation for a particular Claimant, they shall identify that Claimant to the EEOC and provide documentation demonstrating the reason for no rehire. If the EEOC finds that the documentation does not demonstrate a legitimate basis for no rehire, it will provide the information to the EEO Monitor, who shall decide whether there is cause to maintain the "no rehire" notation. Upon request by one or both of the Parties, the determination of the EEO Monitor shall be subject to review by the District Court.

      3.    Defendants will consider an application for employment received from a Claimant on an equal basis with applications received from other applicants, and a Claimant's participation in this Action, status as a Claimant, and present or former disability, record of disability, or need for accommodation will not be factors in Defendants' selection or non-selection of the Claimant for the position to which she or he applies, except to the extent permitted by the ADA (i.e. with regard to reasonable accommodation, qualification and undue burden), or other applicable law.

4.     As described in Section IX.K.2.h below, Defendants shall report to the EEOC the applications they receive from Claimants and their selection(s) and non-selection(s).

B.     Equal Employment Opportunity Monitor

1.     Defendants shall retain an Equal Employment Opportunity Monitor ("Monitor") with demonstrable experience in the ADA, including creating effective policies, procedures, practices and training regarding disabilities, reasonable accommodations, the interactive process, and retaliation under the ADA, to monitor Defendants' compliance with the ADA and the provisions of the Decree. The Monitor shall be subject to the EEOC's approval, which shall not be unreasonably withheld. Within fourteen (14) days of the Effective Date, Defendants shall propose a Monitor to the EEOC. If the EEOC's does not approve the proposed Monitor, the EEOC shall provide Defendants with a list of at least three suggested candidates acceptable to the EEOC. Defendants shall bear all costs associated with the selection and retention of the Monitor and the performance of his or her duties. If the Monitor initially retained by Defendants thereafter declines to serve or to carry out her or his duties under the Decree, Defendants shall, within fourteen (14) days, notify the EEOC in writing of the need for a replacement Monitor, and the EEOC shall provide Defendants with three (3) new Monitors from which Defendants shall select a replacement. Defendants shall retain the original or replacement Monitor within thirty (30) days of the EEOC providing its approval or list of suggested candidates in writing.

2.     Defendants shall advise the Monitor (and any replacement for her or him) that she or he has access to the EEOC and that she or he shall work with the EEOC as necessary to ensure Defendants' compliance with this Decree.

3.     The Monitor's responsibilities shall include:

a.     Reviewing and revising Defendants' policies with respect to both applicants for employment and employees regarding the prevention of disability discrimination, provision of reasonable accommodations, and engagement in the

-22-
[PROPOSED] CONSENT DECREE AND ORDER

interactive process, ensuring Defendants implement these policies, and reviewing their implementation;

      b.    Reviewing and revising Defendants' procedures regarding requests for accommodation and the interactive process, ensuring Defendants implement these procedures, and reviewing their implementation;

      c.    Reviewing requests for accommodation and Defendants' interactive process with regard thereto;

      d.    Reviewing and revising Defendants' procedures for responding to complaints of disability discrimination, failure to engage in the interactive process, and/or failure to provide reasonable accommodation, ensuring Defendants implement these procedures, and reviewing their implementation;

      e.    Reviewing complaints of disability discrimination, failure to engage in the interactive process, failure to provide reasonable accommodation, and/or retaliation with regard thereto and Defendants' investigation thereof;

      f.    Reviewing, and making recommendations regarding training for Defendants' human resources, managerial, and supervisory staff on their responsibilities with respect to the ADA, including reasonable accommodations and the interactive process, and anti-retaliation policy;

      g.    Reviewing, making recommendations regarding, and approving training materials for all persons who work for Defendants on their rights and responsibilities with regard to disability discrimination, reasonable accommodations, and the interactive process, in compliance with the ADA;

      h.    Developing procedures to ensure the preservation of personnel and employment records regarding all requests for a reasonable accommodation, the interactive process, and complaints of disability discrimination; ensuring Defendants implement these procedures; and reviewing their implementation;

      i.    Developing Defendants' reporting and auditing procedures to assist Defendants in carrying out their compliance obligations under the Decree;

j.      Assisting and assessing Defendants with respect to the proper identification of individuals covered by the ADA, engaging in the interactive process, and providing reasonable accommodations under the ADA;

k.      Evaluating Defendants' progress in compliance under the Decree;

l.      Monitoring Defendants' compliance with the terms of the Decree; and

m.      Preparing an annual report on Defendants' compliance with the foregoing areas/obligations, including their compliance with the terms of the Decree and the Monitor's compliance with her or his responsibilities as articulated herein, which shall be provided simultaneously to the EEOC and Defendants.

4.      The Monitor shall assess Defendants' compliance with the foregoing provisions for the Term of the Decree by conducting in-person audits of Defendants' practices to ensure compliance on an annual basis. Defendants shall make available to the Monitor such documents, personnel, and access to facilities necessary to conduct the compliance audits, so long as the requests for such things are reasonable and do not interfere with Defendants' rendering of care or orderly operations. The Monitor will endeavor to work cooperatively with Defendants in these audits and avoid undue financial burden.

5.      Starting with the Monitor's third annual report, the Monitor may include a statement in her or his report that she or he believes that her or his involvement is no longer necessary to ensure Defendants' compliance with this Decree and the ADA, which must be supported by a detailed explanation of the bases for this statement. Upon the EEOC's agreement, which it shall not unreasonably withhold, the Monitor's duties shall thereafter be concluded in an orderly fashion prior to expiration of the Term of the Decree.

C.     ADA Coordinator(s) and ADA Points of Contact

1.     Within thirty (30) days after the Effective Date, Defendants shall designate or hire an ADA Coordinator(s) who shall work out of Defendants' central office.  In addition, Defendants may designate ADA Points of Contact for each of their facilities and locations who may be delegated responsibilities of the ADA Coordinator(s), as set forth below and subject to the approval of the Monitor, and whose fulfillment of those responsibilities shall be overseen by the ADA Coordinator(s).  The ADA Points of Contact may include, but not be limited to employees who are benefits ambassadors or payroll supervisors. The ADA Coordinator(s)'s responsibilities shall include the following:

a.     Receiving and timely processing requests for accommodation from employees and applicants (this responsibility that may be delegated to the ADA Point of Contact at the facility(ies) and location(s) for which she or he is responsible);

b.     Participating in or reviewing any interactive process to ensure compliance with the ADA and terms of the Decree (this responsibility that may be delegated to the ADA Point of Contact at the facility(ies) and location(s) for which she or he is responsible);

c.     Participating in any decision regarding the provision or denial of any accommodation to ensure compliance with the ADA and the terms of the Decree (this responsibility that may be delegated to the ADA Point of Contact at the facility(ies) and location(s) for which she or he is responsible);

d.     Communicating with employees regarding the status and resolution of requests for accommodation and complaints of discrimination (this responsibility that may be delegated to the ADA Point of Contact at the facility(ies) and location(s) for which she or he is responsible);

e.     Reviewing every accommodation under consideration for rescission at the facility(ies) and location(s) for which she or he is responsible;

communicating with each employee whose accommodation is under consideration for rescission before it is rescinded and providing her or him the opportunity to participate in the process, including but not limited to requesting an alternative reasonable accommodation, to the extent required by the ADA, and ensuring that any such rescission complies with the ADA (this responsibility may be delegated to the ADA Point of Contact at the facility(ies) and location(s) for which she or he is responsible);

      f.     Reviewing any decision that was delegated to an ADA Point of Contact regarding the provision, denial, or rescission of any accommodation to ensure compliance with the ADA and the terms of the Decree;

      g.     Ensuring ADA compliance in selection and termination decisions at the facility(ies) and location(s) for which she or he is responsible; and

      h.     Receiving, processing, and investigating complaints of disability discrimination, failure to accommodate, and retaliation with regard thereto.

2.     All employees at each of Defendants' facilities and locations will be informed in writing when the ADA Coordinator(s) is designated, hired, and/or changed, and, if applicable, the ADA Point of Contact for their facility/location, including all contact information for the ADA Coordinator(s) and ADA Point of Contact and a brief explanation of the ADA Coordinator(s)'s and ADA Point of Contact's responsibilities.

3.     The ADA Coordinator(s) may communicate directly with the Monitor in compliance with this Decree.

D.     Policies and Procedures

1.     Revision of Policy. Within ninety (90) days of the Effective Date, the Monitor shall work with Defendants to review and revise their policies and procedures concerning disability discrimination and reasonable accommodation (the "Policy"). The revised Policy shall include:

      a.     A clear explanation of what constitutes a disability under the ADA, as well as the ADA's reasonable accommodation and interactive process

requirements, and a statement that retaliation for requesting an accommodation or making a complaint of discrimination on the basis of disability is prohibited;

b.  Clear and objective criteria that expressly prohibits discrimination on the basis of disability and/or perceived disability;

c.  A specifically described procedure by which employees may seek reasonable accommodations through the interactive process, including: to whom an employee may make requests for accommodation, the procedures for communicating such requests, the identity of whom an employee or applicant may contact if they have questions about the process, and examples of reasonable accommodations including but not limited to leave as an accommodation to the extent required by the ADA;

d.  Assurance that Defendants will protect the privacy of all reasonable accommodation requests and discrimination complaints to the extent practicable as required by the ADA;

e.  A clearly described complaint process that provides multiple avenues of complaint to whom employees may report disability discrimination, failure to engage in the interactive process, failure to provide reasonable accommodation, and/or retaliation with regard thereto;

f.  Assurance that Defendants will conduct a prompt, thorough, and impartial investigation and take prompt and appropriate corrective action when it determines that discrimination, failure to accommodate, and/or retaliation has occurred; and

g.  A statement that retaliation for requesting an accommodation or making a complaint of discrimination on the basis of disability is prohibited; and

h.  Assurance that Defendants will hold all employees, including managers, accountable for engaging in conduct prohibited under the Policy and ADA and, at Defendants' option, other anti-discrimination laws.

2. Distribution of Policy

a.     Within five (5) business days of the EEO Monitor's approval of the revised Policy, and no later than one hundred (100) days of the Effective Date, Defendants shall provide to the EEOC a copy of the Policy and an accompanying notice which explicitly states that Defendants have eliminated (i) any past policy or practice that required an employee with a disability to fulfill non-essential job functions (100% of job duties) and/or have no medical restrictions (100% fit for duty/100% healed) before being permitted to return to work; and (ii) any past policy or practice that limited the availability of leave as a reasonable accommodation to a pre-determined maximum amount (the "elimination notice").

b.     Within one hundred and twenty (120) days of the Effective Date, Defendants shall distribute its Policy and the elimination notice to each managerial and non-managerial employee.

c.     Within the Term of the Decree, Defendants will provide a copy of the Policy to any employee hired after the distribution date of the Policy within thirty (30) days of the employee's start date.

3. Posting of Policy

a.     Within one hundred and twenty (120) days of the Effective Date and throughout the duration of the Decree, Defendants shall physically and accessibly post the Policy in a conspicuous place at all of Defendants' facilities in an area accessible to all employees. Defendants shall notify all employees that they may request a copy of the Policy in alternative accessible formats, including but not limited to, electronically, in large type, and/or translated.

E.     Accommodation of Lifting Restrictions

1.     Defendants shall make efforts to expand their capacity to accommodate lifting restrictions. This expansion may include:

a.     The acquisition of additional lifting equipment, such Hoyer Lifts, gait belts, and other transfer assists and lifts; and

b.     Issuing guidelines stating that employees are permitted to request assistance when lifting patients/residents.

2.     The Monitor shall assess Defendants' efforts to expand their capacity to accommodate lifting restrictions, and Defendants shall not unreasonably reject recommendations made by the Monitor based on that review.

3.     The Monitor shall report to the EEOC the efforts made by Defendants to improve their capacity to accommodate lifting restrictions.

F.     Performance Evaluations

Within ninety (90) days of the Effective Date, Defendants shall create a provision in the annual performance evaluation of its ADA Coordinator and human resources personnel responsible for implementing and overseeing Defendants' ADA compliance to hold individuals accountable for failing to engage in the interactive process, failing to provide or administer reasonable accommodations to employees, or failing to comply with Defendants' policies and procedures regarding reasonable accommodation and disability discrimination.

G.     Accommodation Log

1.     Defendants shall create and maintain a log that documents any accommodation requests pertaining to any applicant or employee (the "Accommodation Log"). In the event an employee makes any subsequent request to modify an accommodation or implement a different accommodation, Defendants shall include in the Accommodation Log the information required by this Section. The Accommodation Log shall include the following information:

a.     Name of person making the request;

b.     Date of the request;

c.     Physical or mental impairment;

d.     The person(s) to whom the request for accommodation was made;

e.     The accommodation(s) requested;

f.     The person(s) involved in the interactive process;

g.     The records or documents made or reviewed in the course of

engaging in the interactive process;

  h.  The person(s) involved in the decision-making process regarding the request for accommodation;

  i.  The accommodation(s) provided;

  j.  The reason for the decision to provide or refuse any accommodation;

  k.  Any complaints made by individuals regarding accommodation issues, disability discrimination issues, and/or retaliation issues; and

  l.  Whether any modification or additional accommodations related to a prior accommodation were sought and if such requests were granted or denied.

H. Training

 1. All Employees.

  a.  Defendants shall provide training materials approved by the Monitor to all Defendants' employees. The training materials must invite employees to ask questions and provide a clearly explained method for doing so. The training materials shall be provided in multiple languages, to be determined in consultation with the Monitor based on Defendants' employees' reading fluency, and shall cover the revised Policy and the ADA, including:

   i.  The role and purpose of the ADA, including what constitutes unlawful discrimination and the denial of a reasonable accommodation;

   ii.  The rights and responsibilities under the ADA, including, but not limited to engaging the interactive process and how to provide, request, and obtain a reasonable accommodation and specifically the right to work with restrictions and/or return to work before "fully healed";

   iii.  Defendants' policies and procedures for reasonable accommodation requests, including engaging in the interactive process;

iv.     The type of conduct that is considered discriminatory under the ADA; and

v.      Defendants' policies and procedures for reporting and handling complaints of disability discrimination, failure to engage in the interactive process, failure to provide reasonable accommodation, and/or retaliation with regard thereto. Examples shall be given of the prohibited conduct to ensure understanding by the employees.

b.      All persons required to receive such training materials shall verify in writing that they received them.

c.      Within thirty (30) days of the start date of any employee hired within the Term of the Decree, Defendants shall provide them the training materials set forth above.

2.      Managerial and Supervisory Employees

a.      Within one (1) year of the Effective Date, Defendants, in consultation with the Monitor, shall ensure that all Defendants' managerial and supervisory employees and ADA Points of Contact receive an interactive Managerial Training. The Managerial Training may be incorporated into a longer training addressing related issues, but must specifically address the ADA and the revised Policy, including the topics set forth in Section IX.H.1 above and:

i.      Identifying who is protected under the ADA;

ii.     Recognizing an accommodation request or potential need for an accommodation for individuals with disabilities;

iii.    Engaging in the interactive process to handle reasonable accommodation requests;

iv.     Recognizing and prevent disability discrimination;

v.      The proper handling and investigation of complaints of disability discrimination (even though these supervisors may not be themselves conducting investigations); and

vi.      Elimination of misunderstandings concerning the ADA, including avoiding "100% of job duties" and "100% fit for duty"/"100% healed" practices, inflexible return to work requirements, and inflexible leave policies;

b.      The Managerial Training set forth above shall be mandatory for all employees employed as managerial or supervisory and/or ADA Points of Contact by Defendants during the first year of the Decree. All persons required to receive such training shall verify in writing that they received it.

c.      Within sixty (60) days of the hire, promotion or designation of any managerial or supervisory employee or ADA Point of Contact after the first year of the Decree but within the Term of the Decree, Defendants shall provide a Management Training covering the same issues set forth above. All persons required to receive such training shall verify in writing that they received it.

d.      A second Managerial Training that complies with Section IX.H.2.a above shall be provided to all Defendants' employees employed as managerial and supervisory employees and ADA Points of Contact during the third year of the Decree. All persons required to receive such training shall verify in writing that they received it.

e.      During the second and fourth years of the Decree, Defendants shall ensure that all Defendants' managerial and supervisory employees and ADA Points of Contacts receive refresher materials, approved by the Monitor, addressing the topics set forth in Section IX.H.2.a above. These materials shall be distributed during an in-person managerial or supervisory meeting, and the recipients must be informed at that time to whom they may direct any questions. At the end of each year, Defendants shall certify to the EEOC that it has complied with this provision.

3.     Human Resources Employees and ADA Coordinator

a.     Within one hundred and twenty (120) days of the Effective Date, Defendants, in consultation with the Monitor, shall provide live, interactive, and advanced Human Resources Training ("HR Training") to their human resources employees and ADA Coordinator(s). Excluded from this requirement are employees in the human resources department whose duties are primarily clerical. This HR Training may be incorporated into a more general equal employment opportunity human resources training, but at least two (2) hours are specifically devoted to the ADA and the revised Policy, including:

i.     The interactive process, include the necessity of communicating with every party involved with a particular accommodation in order to assess the needs of the employee requesting a reasonable accommodation, including medical leaves of absence;

ii.     How to recognize an accommodation request or a potential need for an accommodation for individuals with disabilities, and how to determine effective accommodation, including intermittent leave of absences as a reasonable accommodation;

iii.     Monitoring accommodations to ensure employees are effectively accommodated and to ensure accountability of all parties involved in the accommodation process;

iv.     Obligations under the Decree, including the duties regarding the Accommodation Log;

v.     The interplay of the ADA, including the ADA Amendments Act of 2008, with the Family and Medical Leave Act;

vi.     How to recognize an accommodation request or a potential need for an accommodation for individuals with disabilities;

vii.     Investigating and properly handling complaints of disability discrimination and failure to accommodate; and

viii.    Reviews of prior decision-making and responses to

requests for reasonable accommodation received in the past year.

b.    The HR Training set forth above shall be mandatory and occur

annually for the duration of the Decree. All persons required to attend such

training shall verify their attendance in writing. Any Human Resources employee

or ADA Coordinator unable to attend any scheduled HR Training shall be trained

within sixty (60) days of the live training set forth in Section IX.H.3.a above.

c.    Within sixty (60) days of the start date, promotion, or assignment

of any Human Resources employee or ADA Coordinator after the annual training

but within the Term of the Decree, Defendants shall provide a live HR Training

covering the same issues set forth in Section IX.H.3.a above.  All persons

required to attend such training shall verify their attendance in writing.

d.    In addition to the formal training, Defendants shall allow the

Monitor to work with their human resource employees and ADA Coordinators on

an informal basis to provide feedback on accommodation requests and the

interactive process, and they shall provide the name and contact information for

the Monitor to their human resource employees and ADA Coordinators so they

can seek guidance from the Monitor as needed. The Monitor shall include in her

or his reports a section addressing the improvements she or he has observed

through these efforts.

4.    Verification of Training

a.    The Monitor shall have the right to attend the formal trainings

described in the Decree. Upon the setting of its training schedule each quarter,

Defendants shall provide the Monitor the schedule that will include the time and

location of the training session.  The Monitor shall inform the EEOC each time

she or he attends a training. In order to minimize financial burden, the Monitor

shall not attend more than one training every six months.

I. Posting of Notice of Consent Decree and Settlement.

Within fourteen (14) days after the Effective Date and throughout the Term of the Decree, Defendants shall post the notice attached to the Decree as Exhibit A, in a clearly visible location frequented by employees at Defendants' facilities nationwide during the Term of the Decree.

J. Record Keeping

1. Defendants shall work with the Monitor to establish a record-keeping procedure that provides for the centralized tracking of reasonable accommodation requests and disability discrimination complaints. The records to be maintained shall include:

a. All personnel and employment records reflecting requests for accommodation, which shall be preserved for the Term of the Decree and thereafter for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later;

b. All personnel and employment records reflecting complaints of disability discrimination, failure to engage in the interactive process, failure to provide reasonable accommodation, and/or retaliation with regard thereto, including documents relating to all investigations or resolutions of such complaints;

c. All personnel and employment records received from or reflecting the selection or non-selection of a Claimant who applied for employment with Defendants or their subsidiaries during the Term of the Decree, including without limitation: job applications and related materials received from Claimant and all other candidates for the position(s) to which Claimant applied, interview notes, job offers, non-selection notices, and documentation of the selection process;

d. Forms acknowledging employees' receipt of the Policy; and

e. Documents verifying the occurrence of all training sessions and names and positions of all recipients of each training required under the Decree;

1    and

2        f.      All annual performance evaluations of ADA Coordinator(s), ADA

3    Points of Contact, and human resources personnel responsible for handling ADA

4    accommodations and complaints of discrimination, failure to accommodate or

5    failure to engage in the interactive process, reflecting accountability for engaging

6    in the interactive process, providing and administering reasonable

7    accommodations to employees, or complying with Defendants' policies and

8    procedures regarding reasonable accommodation and disability.

9        2.      Defendants will make the aforementioned records available to the EEOC

10   within thirty (30) days following a written request by the EEOC.  If Defendants identify

11   an inadvertent failure to maintain a record requested by the EEOC, Defendants shall

12   notify the EEOC and, to the best of their ability, provide the EEOC in writing with the

13   substantive information the lost record would have showed, which shall be considered

14   substantial compliance with this section unless the EEOC demonstrates prejudice to the

15   implementation of the substantive provisions of the Decree.

16   K.    Reporting

17       1.    Initial Reporting. Defendants, in coordination with the Monitor, shall

18   provide the following reports to the EEOC in addition to the annual reports described

19   below:

20       a.      Within one hundred fifty (150) days of the Effective Date,

21   Defendants shall submit to the EEOC a statement confirming distribution of the

22   Policy and the elimination notice to each managerial and non-managerial

23   employee.

24       b.      Within one hundred fifty (150) days of the Effective Date,

25   Defendants shall submit to the EEOC a statement confirming the posting of the

26   Policy and its availability in alternative accessible formats.

27       c.      Within thirty (30) days of each of the trainings (and provision of

28   training materials) set forth in Sections IX.H.1.a, IX.H.2.a, and IX.H.3.a above,

Defendants shall produce to the EEOC documents verifying the occurrence of all training sessions conducted as required under the Decree, including the written training materials used, a description of the training provided, a list of the individuals who conducted the training, and a list of the names and job titles of the recipients of each training.

2.      Annual Reporting. Defendants, in coordination with the Monitor (who shall assist the Defendants in the preparation of any reports required by this Decree), shall provide the following reports to the EEOC annually throughout the Term of the Decree:

a.      A statement confirming that the Policy has been distributed to all employees hired after the initial distribution but during the previous twelve (12) months and has remained posted and available in alternative accessible formats;

b.      Documents verifying the occurrence of all training sessions conducted as required under the Decree during the previous twelve (12) months, including the written training materials used, a description of the training provided, a list of the individuals who conducted the training, and a list of the names and job titles of the recipients of each;

c.      Acknowledgement of receipt of the Policy for all employees during the previous twelve (12) months;

d.      A copy of all Accommodations Logs created pursuant to Section IX.G above for accommodations requested, granted, denied, and/or modified during the previous twelve (12) months;

e.      Confirmation of compliance with the Notice Posting requirement as set forth in Section IX.I above during the previous twelve (12) months;

f.      A report summarizing all complaints of disability discrimination, failure to engage in the interactive process, failure to provide reasonable accommodation, and/or retaliation with regard thereto made, investigated and/or resolved during the previous twelve (12) months, which includes for each

1   complaint: (i) the name and title of the complaining party(ies); (ii) the date of the

2   complaint; (iii) the nature of the complaint (i.e. disparate treatment, failure to

3   accommodate, hostility, etc.); (iv) the name and title of alleged perpetrator; (v) a

4   written description of what was alleged; (vi) a brief written summary of

5   Defendants' investigation, and (vii) a written description of the resolution of the

6   complaint, including a description of what actions, if any, Defendant(s) took;

7       g.     A report summarizing the performance evaluations of ADA

8   Coordinator(s) and human resources personnel with respect to their accountability

9   for complying with Defendants' policies and procedures regarding reasonable

10   accommodation and disability;

11       h.     A report summarizing applications for employment received from

12   Claimants during the previous twelve (12) months, including: the identity of the

13   Claimant, the position(s) for which she or he applied, the facility(ies) to which she

14   or he applied, the position(s) offered to the Claimant, if any, and the reason for the

15   Claimant's non-selection, if applicable;

16       i.     A report showing any revisions of Defendants' policies and

17   procedures regarding reasonable accommodation, disability discrimination, or

18   leave that have occurred since the preceding report, including a copy of the

19   revised policies or procedures;

20       j.     A report summarizing the progress made by Defendants during the

21   previous twelve (12) months concerning the increase in Defendants' capacity to

22   accommodate lifting restrictions in each position at each of its facilities and, if

23   any revisions to Defendants' policies and procedures concerning the

24   accommodation of lifting restrictions have occurred since the previous report,

25   including copies of the revised policies and procedures; and

26       k.     The status of Defendants' compliance with the terms of the

27   Decree.

28

1    **X.    MISCELLANEOUS PROVISIONS**

2         A.    During the Term of the Decree, Defendants shall provide any person or entity

3    who is, or will be, upon consummation of a transaction and the continued operation of the

4    facility or facilities, subject to this Decree as a successor as set forth in Section I.A and limited in

5    Section I.F of this Decree, with a copy of the Decree within a reasonable time of not less than

6    thirty (30) days prior to the closing of any agreement for acquisition or assumption of control of

7    Defendants' facilities.  Defendant shall have no obligation to provide a copy of the Decree to any

8    person or entity that is excluded from the definition of "successor" as set forth in Section I.F of

9    this Decree.  Defendant shall also provide reasonable notice to the EEOC of a material change in

10    corporate structure.

11         B.    During the Term of the Decree, Defendants shall assure that each of their officers,

12    managers and supervisors is aware of any provision(s) of the Decree which may be related to

13    his/her job duties.

14         C.    Unless otherwise stated, all notices, reports and correspondence required under

15    the Decree shall be delivered to the attention of Anna Y. Park, Regional Attorney, U.S. Equal

16    Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles,

17    California, 90012; facsimile number (213) 894-1301; email LADO@eeoc.gov and

18    anna.park@eeoc.gov.  Defendants shall maintain copies of all such notices, reports and

19    correspondence for at least the Term of the Decree.

20         D.    The Decree may be signed in counterparts.  A facsimile signature shall have the

21    same force and effect of an original signature or copy thereof.

22    **XI.   COSTS OF ADMINISTRATION AND IMPLEMENTATION OF THE DECREE**

23         A.    Defendants shall bear all costs associated with their administration and

24    implementation of their obligations under the Decree.

25    **XII.   COSTS AND ATTORNEYS' FEES**

26         A.    Each party shall bear its own costs of suit and attorneys' fees.

27

28

1     The Parties agree to entry of the Decree and judgment subject to final approval by the

2  Court.

3     All parties, through the undersigned, respectfully apply for and consent to this entry of

4  this Consent Decree Order.

5

6                                              Respectfully submitted,

7                                              U.S. EQUAL EMPLOYMENT
                                               OPPORTUNITY COMMISSION
8

9  Date: 2|14|20                    By:

10                                             Anna Y. Park
                                               Regional Attorney
11                                             *Attorney for Plaintiff EEOC*

12

13                                             DEFENDANTS[3]

14  Date: 2/14/20                    By:

15                                             Harold Delamarter, Ryan Delamarter
                                               CEO, President, and/or Chief Legal Officer
16                                             Authorized Representative

17

18                                             LANE POWELL PC

19  Date: 2/14/20                    By:

20                                             Paul M. Ostroff
                                               Shareholder
21                                             *Attorney for Defendants*

22

23

24

25

26

27  _____

28  [3] Mr. Delamarter, CEO of Prestige Care, Inc., is the CEO, President, and/or owner of all Defendants to the Action,
    with the exception of Cypress Point Ventures, LLC, and is authorized to act on behalf of and bind all such
    Defendants.

1

~~[PROPOSED]~~ ORDER

2    **GOOD CAUSE APPEARING:**

3    The Court hereby finds that compliance with all provisions of the foregoing Decree is fair

4    and adequate.  The Court hereby retains jurisdiction for the Term of the foregoing Consent

5    Decree, and the provisions thereof are hereby approved.

6    **IT IS SO ORDERED.**

7

8    DATED: _02 / 19 / 2020_ _____

9                           ~~THE~~ HONORABLE ANTHONY W. ISHII
                            UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Los Angeles District Office**

255 E. Temple Street, 4th Floor
Los Angeles, CA 90012
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Los Angeles Status Line: (866) 408-8075
Los Angeles Direct Dial: (213) 894-1000
TTY (213) 894-1121
FAX (213) 894-1118
Website: www.eeoc.gov

### NOTICE TO EMPLOYEES
### OF PRESTIGE CARE, PRESTIGE SENIOR LIVING, AND THEIR AFFILIATES

1.      This **NOTICE** is being posted and provided as part of a mutually agreed upon Consent Decree between Prestige Care, Inc., Prestige Senior Living, LLC, Prestige Senior Management, LLC, and their affiliates ("**PRESTIGE**") and the Equal Employment Opportunity Commission (the "**EEOC**") in Case No. 1:17-cv-01299-AWI-SAB filed in the U.S. District Court for the Eastern District of California, which alleged that PRESTIGE maintained policies and practices that required that all employees be "100% fit for duty"/"100% healed" and perform "100% of job duties" and failed to provide reasonable accommodations in violation of the Americans with Disabilities Act. PRESTIGE and the EEOC voluntarily entered into the Decree to resolve these allegations. As part of the Decree, PRESTIGE is posting this NOTICE to reflect its commitment to ensure equal employment opportunity for individuals with disabilities working at PRESTIGE.

2.      PRESTIGE policy and Federal Law prohibit discrimination in any phase of employment based upon disability and the need for a reasonable accommodation of disability with respect to hiring, assignment, pay, hours, leave, promotion, recruitment, admission, training, dismissal, or any other terms, conditions, or privileges of employment. PRESTIGE will comply with such Federal law in all aspects, and it will not retaliate against employees because they have exercised their rights under the law by filing any complaint of discrimination or cooperating with the EEOC or by otherwise opposing employment practices made unlawful under federal law, including requesting accommodation of disability.

3.      PRESTIGE will engage in an individualized, interactive process with any employee or job applicant who notifies it of a disability or disabling condition, whether temporary or otherwise, or who requests a reasonable accommodation for such a condition, to identify a reasonable accommodation that will enable her/him to perform the essential functions of her/his position and/or to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities. This includes employees with disabilities returning from leave, and PRESTIGE will not impose a bar from light duty, "100% of job duties" or "100% fit for duty"/"100% healed" policies against such employees.

4.      PRESTIGE has appointed a Monitor, _____, and ADA Coordinator, _____, to ensure Prestige's compliance with the Decree, to oversee investigation and resolution of all reports of discrimination, and to ensure equal opportunity for all employees. If any employee or job applicant believes she or he has been discriminated against, and she or he is not comfortable complaining to her or his supervisor, she or he may report it directly to either _____ or _____.

5.      The EEOC is the federal agency responsible for enforcing the federal laws described above and receiving complaints regarding their violation and maintains offices throughout the United States. Any questions concerning the Consent Decree or compliance with its terms may be directed to the EEOC. Should you have any questions concerning the Consent Decree or compliance with its terms, or would like to complain about discrimination or retaliation, you may contact:

U.S. Equal Employment Opportunity Commission
Los Angeles District Office
255 E. Temple Street, 4th Floor
Los Angeles, CA 90012
Telephone: (213) 894-1000
TTY: (213) 894-1121
FAX: (213) 894-1118
Website: http://www.eeoc.gov

Dated: _____          _____
                                     HAROLD DELAMARTER, CEO, Prestige Care, Inc.

### THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE

**This NOTICE must remain posted for five (5) years from the date shown above
or until the expiration of the Decree, whichever is shorter.
It must not be altered, defaced, or covered by any other material.**